THE PEOPLE OF THE STATE OF ILLINOIS, upon the relation of the Peoria and Oquawka Railroad Company, Complainants, *v.* THE COUNTY OF TAZEWELL, THE BOARD OF SUPERVISORS, and THE CHAIRMAN OF SAID BOARD OF THE COUNTY OF TAZEWELL, Respondents.

### PETITION FOR A MANDAMUS.

Municipal corporations are not bound to discharge indebtedness elsewhere than at their treasuries.

Counties and cities have not the right to make bonds, issued in aid of railroads, payable in the city of New York.

Authorities representing counties and cities are not compelled, when the inhabitants thereof have voted in favor of issuing bonds to aid in constructing railroads, to issue the same, or to subscribe for the whole stock; there is a discretion resting with such authorities in that regard.

Only a proposition to aid in the construction of one railroad should be submitted to the people.

THIS was a petition for a mandamus which recites, That on the 12th of February, A. D. 1849, the General Assembly passed an act incorporating the Peoria and Oquawka Railroad Company, with power to construct a railroad from Peoria to Oquawka, and to Burlington, in Iowa. By amendatory acts, passed February 10th, 1851, and 22nd June, 1852, said company was further authorized to extend said road from Peoria eastward, through Tazewell county, to the Indiana State line.

That said company still exists as a corporation under said laws. Previous to August, 1853, said company had located and partly constructed its road through Tazewell county.

That Tazewell county adopted township organization at the general election in 1849, and has remained so organized ever since.

That at a meeting of the board of supervisors, held on the 23rd August, 1853, a petition was presented to said board, signed by numerous citizens of the county, praying that an election might be ordered to be held on the 24th day of September, 1853, at the usual places of holding elections, throughout the county, ordering the people to vote for and against a subscription by

the said county, of $75,000, to the Mississippi and Wabash Railroad Company, and for and against a subscription of $25,000 to the eastern extension of the Peoria and Oquawka Railroad Company. The petition suggested that payment of the subscription should be provided for by issuing a like amount of bonds of said county, bearing an annual interest of seven per cent., payable semi-annually at the American Exchange Bank, New York, having twenty years to run.

That on the same day a resolution was passed by the board, ordering an election in accordance with the prayer of the petition, and the clerk of the board directed to prepare the proper notices of the said election.

That at a meeting of said board of supervisors, held on the 26th September, 1853, the said board passed a preamble and resolution, reciting the former order for holding the said election, and declaring that the same had taken place as required by the order, and in pursuance of law ; and that at said election, a majority of the votes of said county, taking as a standard the number of votes thrown at the last general election previous to said vote on said subscription, was in favor of said subscriptions, to wit, 1,824 in favor, and 710 against said subscriptions ; the number of votes cast at the general election aforesaid being 2,314.

The petition further states that in fact, said petition was presented, said orders made, said election held in due form of law, and resulted as stated in said orders.

That it became the duty of the defendants to subscribe immediately to the stock of said road, pursuant to the petition, election and orders aforesaid.

That, though often requested, said defendants have refused to subscribe to said stock, or to issue any bonds in payment, as they were bound to do.

That on the 13th of September, 1858, at a regular meeting of the board of supervisors, the relators presented a petition to the board, requesting defendants to make said subscription of $25,000, and to issue their bonds, according to the vote of the people, the requirements of the law and the records and orders of the said board of supervisors.

That at the same time relators presented to said board the original stock subscription book of the said eastern extension of the Peoria and Oquawka Railroad Company, and requested the subscription of the defendants to be made in the same, and tendered to the defendants a certificate of two hundred and fifty shares of stock, at one hundred dollars per share, of the said eastern extension of said company, which defendants refused to accept.

People ex rel. Peoria and Oquawka R. R. Co. *v.* County of Tazewell et al.

That on the 14th September, 1858, at the same session of said board, the petition of relators having been referred to a committee, said committee reported against the same; which report was concurred in by the board, and the defendants thereby refused to subscribe to said stock or issue said bonds.

The relators then gave immediate notice to said board that they would apply at this term, to this court, for a mandamus to compel defendants to subscribe said stock and issue said bonds.

The petition concludes with a prayer for a mandamus to compel the defendants to subscribe $25,000 to the stock of said road, and to issue the bonds of the county in payment for the same, bearing date the 26th September, 1853, with seven per cent. interest per annum, payable semi-annually, at the American Exchange Bank, in the city of New York, and payable twenty years after their date.

By agreement, the petition was to stand as an alternative mandamus, and the board of supervisors were to show cause why a peremptory mandamus should not issue; waiving an issuance of the alternative writ.

The following causes were shown against the issuing of the peremptory writ:

*First.* The law under which the vote in the affidavit of the relators mentioned and set forth was taken, is a nullity, having been passed at the special session of the General Assembly of the State of Illinois, convened by the *proclamation* of the Governor of the State of Illinois, on the 22nd of October, 1849, when the subject of the law under which the said vote was taken, was not one of the subjects upon which the said General Assembly were specially called together to legislate by the said proclamation of the said Governor.

*Second.* The vote mentioned in the affidavit of the relators is void, the vote requiring the interest of the bonds to be paid at the American Exchange Bank in New York, when, by law, the county can only pay its obligations at the treasury of the county.

*Third.* The application by the relators to the said board of supervisors to subscribe the stock and issue the bonds in pursuance of the vote set forth in the affidavit of the relators, not having been made for more than five years after the vote was taken, is a waiver and abandonment of the right of the relators under said vote. And said application now comes too late.

*Fourth.* It is a matter of discretion with the said board of supervisors whether they will issue the bonds and make the subscription in pursuance of the vote.

*Fifth.* The Peoria and Oquawka Railroad Company are not the proper parties to be relators.

*Sixth.* That the relators have mortgaged their road for more than its worth since the vote has been taken, and have no longer the legal title to the same.

*Seventh.* The company have become insolvent, and if a subscription is made, the stock would be worthless.

*Eighth.* The vote mentioned and set forth in the affidavit of the relators is void, because it does not comply with the act under which the vote was taken, and is conditional.

*Ninth.* The vote mentioned in the affidavit of the relators is void in not conforming to the act under which the vote was taken, the act allowing the judges of the County Court, or board of supervisors, to pay for the stock purchased either by borrowing money or by issuing bonds, as said board deem most advisable. The vote allows the issuing of bonds *only*, and deprives the board of supervisors of a discretion conferred by the act, and is therefore void.

*Tenth.* The vote mentioned in the affidavit of the relators is void, for the reason that the vote was taken to subscribe to two roads at the same time.

The relators, to these objections filed the following traverse and demurrer:

And now come the said relators, and for traverse of so much of said defendant's return, numbered and marked " *First*," they say, that the said law of the said State of Illinois was such a law as was contemplated and included within the meaning and spirit of the proclamation, convening the said special session of the General Assembly, as will appear by the said proclamation, a certified copy whereof is hereto attached and made part of this traverse. And the relators further say, that the General Assembly of the State of Illinois, as appears by the statutes of the State, have subsequently recognized, approved, ratified, and in substance re-enacted said law; as by reference to the several acts of the said General Assembly will fully appear.

And as to so much of the said return marked " *Third*," they say, by way of traverse and also by way of demurrer to the said portion of said return, that the same is untrue in fact—inasmuch as it appears from the certified copies of the records filed with the relators' petition, that five years had not elapsed between the time of said vote being taken and the present application to the defendants to subscribe to said stock and issue their said bonds. And also, that a similar application for said subscription and for the issuing of said bonds had been made on the 7th day of March, A. D. 1854, as appears by the record attached to the petition in said cause.

And the said relators also submit by way of demurrer to said portion of said return, that the same, if true, would constitute

no defense to the relief sought and prayed for by the said relators.

The relators deny the allegation in said return, marked " *Sixth,*" or so much thereof as states that " they have not the legal title to the same," and demur to so much thereof as states " that the relators have mortgaged their road for more than it is worth since the vote has been taken."

And as to all the other matters and things stated and set forth in the said return of the said defendants, the said relators say that the same are insufficient in law to bar or preclude the said relators from having and maintaining their said petition, and receiving the relief therein prayed for, and that they are not bound to answer or traverse the same ; and this they are ready to verify ; wherefore they pray judgment, etc.

A rejoinder and replication to these, made up the issue.

N. H. PURPLE, for Relators.

J. ROBERTS, for the Respondents.

WALKER, J. At an election held in Tazewell county on the 24th day of September, 1853, for and against the county subscribing for twenty-five thousand dollars to the capital stock of relators' road, the majority required by law was favorable to such subscription. A part of the question submitted was whether an issue of bonds of the county in payment of the subscription, to draw seven per cent. interest per annum, payable semi-annually at the American Exchange Bank in New York should be made. At the September meeting, 1858, of the board of supervisors of Tazewell county, application was made to them, to subscribe for the stock, which they refused to do, and the shares of stock were tendered by the relators and refused, and the board also refused to issue the bonds of the county. And to compel a subscription and to issue county bonds in payment of the same, this application is made.

The return to the petition sets up numerous reasons why the subscription should not be made. We shall only notice a portion of them, as in the view we take of the case, it is not necessary to discuss the others. It is objected that the county had no right to issue bonds or other obligations, payable at any other place than at the county treasury. This court held in the case of *Prettyman* v. *The Board of Supervi of Tazewell County*, 19 Ill. R. 406, that it was only by virtue of the act of February, 1857, authorizing the County Courts of each county which had subscribed to the Tonica and Petersburg road, to make the interest of their bonds payable at any place they might choose.

That act only applied to subscriptions to that particular road, and can have no application to any other. And it was there held, that the County Court had no power to issue bonds payable in the city of New York, for want of express authority by legislative enactment. States, counties and corporations, created for public convenience only, are not required to seek their creditors to discharge their indebtedness, but when payment is desired, the demand should be made at their treasury. That is the only place, at which payment can be legally insisted upon, and it is the only place, where the treasurer can legally have the public funds with which he is entrusted. To authorize the auditor to draw his warrants on the treasurer, payable in a sister State or in a foreign country, necessarily imposes an obligation on the treasurer, to provide funds at that place, to meet them. And his duties requiring him at the treasury, would require the employment of agents, the transmission of the funds at a risk of loss, and at a considerable expense, in charges, insurance and discounts, which are not incident to its payment at the treasury. And the same reasons apply with equal force, to cities, counties and public corporations, of a similar character. The legislature has conferred no such general power on such bodies, and in its absence, they have no power to make their indebtedness payable at any other place, than at their treasury.

The next question we propose to consider is, whether legislative enactments, authorizing counties and cities to subscribe for such stock, are compulsory, when the citizens have by vote determined in favor of a subscription. That many acts authorized to be performed by such bodies are discretionary, and others are peremptory, will be readily conceded. That the mere grant of authority to such bodies, cannot be construed into a requirement of its performance, without discretion, is obvious. A large portion of their powers, are unquestionably of a discretionary character. But when the law has imposed a duty and required its performance, there can be no discretion exercised, unless it be as to the time or mode of its performance, when neither are pointed out by the act enjoining the duty. To attempt the exercise of all the powers conferred upon those bodies, by the legislature, would seriously involve, if it did not bankrupt, every city, county and incorporated town in the State. Yet when the duty to act is enjoined, whether in express terms or by implication, there can be no choice but to perform the duty required. Counties **and** cities are incorporations, created for public convenience, and to transact the public business of the communities embraced in their limits. They are dependent upon the legislature for their very creation, and from it, they derive all their authority to act. And it is therefore necessary

to examine the various legislative enactments, to determine whether the power conferred upon counties to subscribe for stock in railroad companies is imperative or is only discretionary.

The first section of the act of November, 1849, (Scates' Comp. 950,) provides, " That whenever the citizens of any city or county in this State, are desirous that said city or county should subscribe for stock in any railroad company already organized or incorporated, or hereafter to be organized or incorporated under any law of this State, such city or county may, and are hereby, authorized to purchase or subscribe for shares of the capital stock in any such company, in any sum not exceeding one hundred thousand dollars for each of said cities or counties; and the stock so subscribed for or purchased, shall be under the control of the County Court of the county, or Common Council of the city making such subscription or purchase, in all respects as stock owned by individuals." The second section, authorizes cities and counties to borrow money, or to issue their bonds in payment for such stock. The third section, authorizes the railroad company to which such subscription may have been made, to receive city or county bonds at par, in discharge of such subscriptions, and to dispose of them. The fourth section, provides, that no subscription or purchase shall be made or bond issued by any county or city under the provisions of the act, whereby any debt of such city or county shall be created, to pay such subscription, unless sanctioned by a majority of the votes of the county, at an election to be held to ascertain the fact, and points out the mode of submitting the question to a vote of the city or county. And by the last clause of this section it is provided, that " No bonds shall be issued under the provisions of this act by any county or city, excepting for the amounts required to be paid at the time of subscription, and for amounts of and at the time when assessments upon all stockholders of said company shall be regularly assessed and made payable."

By an amendatory act of March 1, 1854, (Scates' Comp. 953,) the last clause of the fourth section of the act of 1849, was so modified, as to authorize the city council, or the county judges, of any city or county, having subscribed for stock in railroad companies, to issue and deliver the whole, or any portion of the bonds of such city or county, payable on such subscription, at any time when in their opinion the interest of the city or county might be promoted thereby, whether calls had been made or not, on other subscribers.

The first section gives the power to cities and counties to make such subscriptions when desired by their citizens, and it contains no other limitation, except as to amount. To authorize

their legally constituted agents to make a subscription, it was under this section, only necessary that it should be desired by their citizens, and within the limited amount. This section contains no language that can by any rule of interpretation, be held to impose it as a duty, to make such a subscription. It only confers the authority, and provides that they may subscribe for, or purchase stock, under its limitations and restrictions. Neither the context, or the language employed in the first section, makes a subscription imperative, but it is only permissive. And the second and third sections, do not alter or change the provisions of the first. The power conferred by that section, is purely discretionary in the county judges or city council, unless its requirements are changed by the fourth section.

That section, after providing for the manner of submitting the question of subscription to a vote of the city or county, and prescribing the mode of conducting the election and canvassing the vote thus taken, contains this provision, " And if a majority of the votes of said county or city, assuming the standard aforesaid, shall be in favor of the same, such authorized subscription or purchase, or any part thereof, shall be made by said judges or Common Council." The words " such authorized subscriptions," necessarily refers to the authority conferred by a majority of the voters, ascertained by the election, provided in this section. The vote resulting in favor of such subscription or purchase, is necessary to authorize the county judges or city council to act, and is a limitation on the discretionary power conferred by the first section ; as without such vote, they could not subscribe, whatever might be the desire of the citizens of the county or city. But this provision, only requires them to make the " authorized subscription or purchase, or any part thereof." This language is not susceptible of the construction, that when the vote is taken, that they are compelled to subscribe the whole amount proposed by the vote, as it provides that the same or any part thereof, shall be made. The language clearly requires, that they shall subscribe the amount voted upon, or any part of it, and a subscription of any amount, that they may deem for the best interests of the county or city, will fully answer this requirement. A subscription of one share, would be a part of the sum authorized to be subscribed, and it is within the discretion of the county judges or the city council, whether they will subscribe beyond that amount. If the legislature had intended to make it compulsory upon them to subscribe the whole amount, they would have adopted different language from that employed. There is an evident propriety in giving the financial agents of a county or city, a large discretion in the management of its pecuniary affairs. In the change of circumstances to which rail-

road enterprises are constantly subjected, to the varying condition of the finances of the country, the success of rival enterprises, and the want of means to secure success in the construction of railroads, must have dictated the policy adopted by the legislature in leaving it a matter of discretion in the county judges or city council, to subscribe all or any part of the amount authorized. If, immediately after a vote was taken, and resulted in authorizing a subscription, and before the power to subscribe had been exercised, it were to become manifest that the road or any part of it, never could be completed, and the officers to promote private interest, or from a misguided zeal, or over confidence in what might afterwards be accomplished, were determined to push the enterprise, and waste the means of the corporation, the city or county surely ought still to have the means of avoiding the loss, by a power to refuse to make the contemplated subscription. Or, suppose the company, after the vote is had, resulting in favor of subscription, should abandon that portion of the road in which the voters had an interest, and insist upon the issue of the bonds, to be applied on a remote portion, by the completion of which, they could receive no benefit, can it be contended, that there should be no discretion in the financial agents of such municipal corporations to subscribe or not, as the interest of those bodies might require? It cannot be possible, that after a vote has resulted in favor of subscription, and before it has been made, that no change in the affairs or prospects of the road could occur, which would not release them from the duty of making such subscription. The legislature must have intended to invest the county judges and Common Council, with the discretionary power of imposing conditions to the county or city subscription, so far as it might be necessary to protect their interest, and secure the faithful application of the amount subscribed. If however, the law is peremptory, and does compel the subscription for the full amount, and leaves the agents of these bodies without any discretion, when the vote has resulted in favor of subscription, any conditions they might impose would have no binding effect, nor would any imposed by the voters be binding. The legislature has given them the control over the stock when issued, and the discretionary power to issue the bonds, whenever the interest of the county or city may in their judgment, require it. Considerations of policy, could not have induced the legislature to withhold a discretion in making such subscriptions, as these powers delegated, are as important as that of making the subscription of the whole or any part of the sum, authorized by a vote. And that the legislature intended to withhold such a discretion we are unable to believe, and until

that body shall employ different language from that used in the fourth section of this act, we cannot so hold.

Until the county or city has subscribed, there is no privity between the road, and county or city. It is the contract of subscription which compels the subscriber, for stock, to pay his money, and the company to issue to him, shares of their stock. Until the county subscribes for shares of their stock, the company hold no obligation on the county and cannot by tendering shares of stock, compel them to subscribe or to issue bonds, nor have they any power to compel the road to issue to them shares of their stock. Until the subscription is made it is entirely at the option of the road, whether they will permit such subscription. Before the subscription is made, no obligation exists between the parties. Nor can the vote be treated as an agreement between the county and the road, beyond what the law has peremptorily required to be performed. When the vote was taken and resulted in favor of subscription, it only amounted to a delegation of power to the supervisors, to make the contract of subscription, as the law then authorized them to do. The company was no party to this vote, and has no more right to insist upon the execution of the power thus delegated, than it would have in case an individual were to authorize an agent to subscribe for stock in the road and who should refuse to exercise the power for his principal.

In the case of *Fulton County* v. *The Wabash and Mississippi Railroad Co.*, 21 Ill R. 338, this court held, that the law did not authorize the submission of a proposition for subscription of a gross sum, to two roads, in the same submission, in such a manner that the voter had no option, to vote for the one, and against the other. This submission was made in that manner. It proposed to subscribe one hundred thousand dollars, one-fourth to this, and three-fourths to another road, and the voter, however much in favor of submission to one, and opposed to the other, was compelled to vote either for or against the entire subscription. That case is decisive of this, and we deem it unnecessary to again discuss the question in this case.

We are for these reasons of the opinion, that the relators have failed to show a case by their petition, which entitles them to the relief prayed, and that the demurrer to the return should be sustained to the petition. The writ of mandamus is refused.

*Mandamus refused.*