## Case No. 5,501.

GOEDGEN v. MANITOWOC COUNTY.

[2 Biss. 328; 2 Chi. Leg. News, 333; 5 Am. Law Rev. 188.][1]

Circuit Court, D. Wisconsin. June Term, 1870.

COUNTY BONDS—MEETING OF SUPERVISORS MUST BE REGULARLY CALLED—OTHERWISE NO AUTHORITY TO SUBSCRIBE FOR STOCK AND ISSUE BONDS—TAX-PAYERS MAY ENJOIN.

1. Where the statute of a state prescribes the manner in which a special meeting of the board of supervisors of a county shall be called, a special meeting held without observing these requirements is not legal.

2. A board thus convened has no authority to initiate a proceeding to subscribe for stock in a railroad company and issue bonds in payment therefor, and proceedings based upon the action of such a meeting will be enjoined.

3. Proceedings preparatory to issuing the bonds must as substantially comply with the law, as in levying a tax for the payment of the debt, although in suits brought on such bonds by innocent holders, the court rejects proof of errors in or about the election, or in issuing the bonds. Objections made by tax-payers before the bonds are issued, are in time.

This bill was brought by complainants as aliens, alleging that they own real estate in the county of Manitowoc subject to taxation, of the value of six thousand dollars and upwards. By an act passed by the legislature of this state, approved March 10, 1870 [P. & L. Laws Wis. 1870, p. 527, c. 242], entitled "An act to incorporate the Milwaukee, Manitowoc and Green Bay Railroad Company," it was provided, among other things, that the several counties upon, or contiguous to the line of the road as it may be located, were authorized to aid in the construction of the road by subscribing to the stock of the company, and paying for the same in money, and levying a special tax to raise money for that purpose, or by issuing bonds to said company in payment for said stock, and levying taxes to pay the interest as it accrues upon said bonds, &c., and to establish a sinking fund for the payment of the principal, provided, that before any such aid be granted or contracted for by any such county, the question of granting the same shall be submitted to a vote of the electors thereof. The act further provided, that on a certificate of the president and secretary of the company under the corporate seal to the authorities of any such county that the line of the road has been located through or contiguous to said county, the said authorities might at their discretion call a special election to determine the question of giving aid to the company. Such election should be called, notice thereof given, the form of the ballots prescribed, and all regulations relating to the same determined by the proper authorities of the county, so that the question be fairly submitted to a vote of the electors. A second act, approved April 9, 1866 [P. & L. Laws Wis. 1866, p. 906, c. 365], entitled "An act to incorporate the Appleton and New London Railway Company," authorized the company to construct a railway between those points. And by an amendment to said act the company was authorized to extend its road, and build a branch road to any point where it will intersect the Sheboygan and Mississippi road, and to any harbor on Lake Michigan, with a proviso that nothing in the act shall be so construed as to prevent any city, incorporated village, town, or county, from subscribing to the capital stock of the company; and it authorized any of them to subscribe to such capital stock, and issue bonds in payment for the same, such issue of bonds to be authorized by a majority of the legal votes cast at an election to be previously authorized by the proper boards. It was charged that the election upon the question of subscribing to the stock of those companies was not called nor conducted according to law. It appears that the board of supervisors met on the 30th of March, 1870, in the office of their clerk, six members of the board being present, and one absent; that the ayes and noes were called on the question to submit to the voters of the county the propositions of the two companies, and that five voted in the affirmative and one in the negative. And it was further voted that the clerk of the board and the sheriff of the county be authorized and instructed to give due notice of such election. The last meeting of the board prior to the 30th of March was held on the 18th of that month, which adjourned sine die, and the meeting held on the 30th of March was a called and special session.

Winfield Smith, for complainants.
Wm. P. Lynde, for defendants.

MILLER, District Judge. The statute law of the state requires that a special meeting of the board shall be holden only by request of the members, addressed to the clerk in writing, and specifying the time and place of such meeting, and upon reception of such request, the clerk shall immediately transmit notice in writing to each of the members of the board. These requirements of the act were not observed. The meeting of the board was called by the clerk on the verbal request of members. The legislature thought it proper that special and extra sessions of the board should only be held pursuant to the prescribed requirements. The call in this case was not sufficient in law to authorize the board to meet and initiate a proceeding to result in contracting a debt on the part of the county to be paid by taxation.

The act incorporating the Milwaukee, Manitowoc and Green Bay Company was approved March 10, 1870. On the 30th, the president and secretary of the company certified to the board that the line of the road was located through the county. On that

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 5 Am. Law Rev. 188, contains only a partial report.]

same day notices were issued for the election to be held on the 12th of April. It does not appear that the board of supervisors prescribed the manner of holding the election, or of giving the notice, or the form of the ballots, or any regulations relating to the election. The clerk of the board and the sheriff issued notices of an election in the matter of aiding the two companies, and prescribed the form of the ballots, pursuant to the resolution of the board on the 30th of March, that the clerk and the sheriff of the county be authorized and instructed to forthwith give due notice of such election. And the ballots were printed on the same sheet and not distributed by order of the board. It is apparent that the board had not complied with the act. The whole business seems to have been put through with too much haste to insure accuracy in the proceedings.

The dockets of this court and of other courts of the United States are filed with suits on corporation bonds issued in aid of railroad companies.

It is the settled rule of the courts to reject all proof of errors alleged to have been committed in or about the election, or the issuing of bonds, in actions by innocent holders. The court holds that objections should be made in a proper form by tax payers before the bonds are issued. This bill is brought in time. And I have no doubt the bonds can only be legally issued so as to contract a debt to be paid by taxation, in the manner prescribed by the law. Authorizing and holding the election and issuing the bonds must substantially comply with the law in every particular. The matter of complaint in this case is not technical, but substantial.

Proceedings preparatory to issuing the bonds must as substantially comply with the law as in levying a tax for the payment of the debt and interest.

Printing the two ballots on the same sheet of paper may not, possibly, of itself be illegal, but it would be a more satisfactory compliance with the act to have the question fairly submitted to a vote of the electors by supplying them at the polls with separate tickets.

For these reasons I am bound to grant the injunction prayed for in this bill.

I think complainants are entitled to claim the jurisdiction of this court. They are aliens, and they allege that the value of their estate is six thousand dollars. The principal and interest of the two hundred and fifty thousand dollars of bonds voted for must be paid by taxation. By the laws of this state the property of complainants can be sold for taxes, and also the amount of taxes to be paid on these bonds for interest and principal by complainants would no doubt exceed the sum of five hundred dollars.

NOTE. Consult Mygatt v. Green Bay [Case No. 9,998]; Luling v. Racine [Id. 8,603], and cases there cited; also, Dill. Mun. Corp. A similar case has recently been decided in the Illinois supreme court, being on a bill to enjoin the issue of county bonds to a railway company on the ground that the proper notice for the election had not been given, and the court held that unless the notice was in pursuance of the statute, the election was invalid and conferred no power upon the board of supervisors, either to make the subscription or issue the bonds, and that the injunction should be granted. Harding v. Rockford, R. I. & St. L. R. Co. [65 Ill. 90]; People v. Tazewell Co., 22 Ill. 147; Fulton Co. v. Mississippi & W. R. Co., 21 Ill. 365; Supervisors of Schuyler Co. v People, 25 Ill. 182; Clarke v. Supervisors of Hancock Co., 27 Ill. 305; Marshall Co. v. Cook, 38 Ill. 44; Wiley v. Town of Brimfield. [59 Ill. 306].