# THE PEOPLE *ex rel.* THE SPRINGFIELD AND ILLINOIS SOUTHEASTERN RAILWAY CO., for use, etc.

*v.*

# THE COUNTY BOARD OF CASS COUNTY.

1. MUNICIPAL SUBSCRIPTION—*when discretionary after vote authorizing.* If the vote of a county is in favor of a corporate subscription to a railway company, under a charter authorizing a subscription in like manner and with the like effect as is provided in the "act to provide for a general system of railroad incorporations," approved November 5, 1849, and acts amendatory thereof, the county authorities will have a discretion either to make or withhold the subscription, as the interests of the county shall seem to be best subserved, and they can not, by *mandamus*, be compelled to make the subscription.

2. But if the charter or law under which an election is held, resulting in a majority vote in favor of the subscription, is peremptory, and leaves no discretion in the county authorities in regard to making the subscription, *mandamus* will lie to enforce the making of the same.

3. SAME—*power of county dependent on vote.* Without an affirmative vote of the people, the authorities of a county have no power whatever to make any contract binding on the county in regard to a subscription to a railway company; and a vote, coupled with conditions that the road shall be located at a designated place, and that the subscription shall not be paid until the road is constructed, does not make a contract to subscribe when the conditions are performed. If the county authorities have a discretion to subscribe on a vote without conditions, the annexing of conditions will not deprive them of its exercise.

4. SAME—*offers held out, on the faith of which the company acts.* Counties having no power to contract with a railway company to subscribe to its capital stock, except when authorized by a vote of the people, it follows that the county authorities can not hold out any offer to such a company, prior to any vote, upon which the company has a right to rely.

5. SAME—*agreement to subscribe.* An agreement on the part of a county to continue a pending suit, and in case a vote is carried to take stock in a railway company in addition to the sum previously voted, and the same is subscribed, the suit shall be dismissed, is no agreement or pledge to make the additional subscription, if the vote is carried.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge presiding.

This was a petition for a *mandamus*, filed by the Springfield and Illinois Southeastern Railway Company, for the use of Cutler, Dodge & Co., against the board of county commissioners of Cass county. The opinion sufficiently states the facts of the case. The cause was originally brought in the circuit court of Cass county, and the venue changed to Sangamon county, where the application was denied.

Mr. G. POLLARD, and Mr. T. W. EWART, for the appellants.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court :.

Unless it appears the board of county commissioners were under legal obligation to issue and deliver to the relator the $50,000 of county bonds, it must be conceded the judgment will have to be affirmed.

If such legal obligation exists, it is by reason of the vote of the 15th of February, 1870, in favor of the subscription, for, since that vote, neither the county court, nor the board of county commissioners, its legal successor, has made any subscription to the capital stock of the relator, or entered into any contract with it, professing to bind the county to make such subscription.

By the tenth section of the charter of the Pana, Springfield and Northwestern Railroad Company (Private Laws of 1865, vol. 2, p. 196), it is provided, "cities and counties shall be entitled to subscribe for stock in said company, in like manner and with like effect" as is provided in the "act to provide for a general system of railroad incorporations," approved November 5, 1849, and acts amendatory thereof. The election at which the vote in favor of the subscription was given, was held under and by virtue of this authority. This court held, in *People ex rel. P. and O. R. R. Co.* v. *The County*

*of Tazewell et al.* 22 Ill. 147, where a vote had been given in favor of subscription to the capital stock of a railroad company, under the provisions of the same law, the authorities representing the county have a discretion either to make or withhold the subscription, as the interests of the county shall seem to be best subserved, and that they can not be compelled, by *mandamus,* to make the subscription.

In a more recent case, *The People ex rel.* v. *Logan County,* 63 Ill. 377, where the language of the charter, under which there was an election and a majority vote in favor of subscription, was peremptory, and left no discretion in the county authorities in regard to making the subscription, it was held *mandamus* would lie to enforce the making of the subscription.

There is no conflict between these cases, the latter being solely governed by the peculiar language of the charter, and, therefore, wholly inapplicable to the present case. The Tazewell county case was incidentally referred to, with approval, in *People* v. *Dutcher,* 56 Ill. 145; and, having carefully re-examined the reasoning by which it is sustained, we see no cause to depart from its conclusions, or to modify or qualify the language of the opinion.

A distinction is attempted to be taken between that case and the present, in this: the subscription there authorized was absolute, while here it is conditional; there, nothing was done upon the faith of the vote, while here, the relator, relying upon the vote as a proposition presented to it by the county, borrowed money and constructed a number of miles of its road, upon the faith of it.

Without the vote, the board of county commissioners would have had no power whatever, as this court has frequently held, to make any contract binding the county in regard to such subscription. The vote, then, merely invests the board with the requisite power to contract; and if it is subject to conditions, the power conferred, instead of being general, is special, and limited by the conditions. In the Tazewell county case,

it was said: "The company was no party to this vote, and has no more right to insist upon the execution of the power thus delegated than it would in case an individual were to authorize an agent to subscribe for stock in the road, and who should refuse to exercise the power for his principal." Extending the illustration to the present case, could it make any difference whether the agent's authority was general or special? If the agent is limited by his authority to subscribe for ten shares of stock in a railroad, upon condition of its line being located at a designated place, for which payment is to be made when it shall have been constructed on such location, would this, of itself, make a contract between the principal and the railroad company, notwithstanding the agent should refuse to exercise his power by making the subscription? Surely not. Why, then, shall a vote, merely conferring authority upon a county board to make a subscription subject to conditions, be held a contract?

The only difference we perceive, material to this question, between a general and conditional authority, is, that the one allows to the board more discretion than the other. But because the board have less discretion, where the vote by which they are empowered to act imposes conditions, than where it does not, it does not follow they have no discretion, and may not, if in their opinion the interests of the county require it, refuse to act. What may be said in favor of their right to refuse to act in the one case, must apply in the other.

An offer can not be held out, upon the faith of which another, by acting, may acquire a right to have it performed, save by those who have the legal right to contract. A county, except when so specially authorized by statute, can not contract through the electors of the county alone, either by the assistance of the ballot-box, or otherwise. In counties under township organization, the board of supervisors, and in counties not under township organization, the board of county commissioners, are, alone, the agencies by and through which the law has provided counties shall contract in respect to sub-

scribing to the capital stock of railroad companies. The board of county commissioners of Cass county, never having subscribed for the capital stock of the relator, nor entered into any contract binding the county to do so, it follows no offer was held out to the relator upon the faith of which it was authorized to act. In relying upon the vote at the election, it trusted to a mere naked power, and nothing more.

We do not consider the fact that, by the terms of the condition upon which the subscription was authorized to be made, no subscription could be made until the road was permanently located through the towns of Ashland and Virginia to Beardstown. as at all important. If the relator was not willing to wait until this was done, and take the chances of getting the subscription, it should have obtained a contract binding the county that the subscription would then be made. Its action has been purely voluntary, and if it trusted unwisely, it must suffer the consequences.

But it is argued, even if the county authorities had a discretion, it was exercised in favor of the relator by a pledge made before the election was called.

How the county could be bound by the acts of those who then had no authority to act, is not explained; but, waiving this, we think the position is not sustained by the evidence.

The pledge to make the subscription, claimed to have been given before the election was called, upon which relator relies, is in the nature of a stipulation. made and filed in a suit pending in this court, in reference to a subscription of $75,000, claimed to have been made by the county to the capital stock of the Rockford, Rock Island and St. Louis Railroad Company, and, omitting the caption and signatures, is in these words:

" It is hereby agreed, that said cause shall stand continued until the next term of said court; and in case the people of Cass county, before the next term of said Supreme Court, shall vote to take $50.000 stock in the Pana, Springfield and Northwestern Railroad, in addition to the stock heretofore

voted to be taken in said road, by said Cass county, and if said stock to be voted for shall be subscribed by said county, then, at the next term of said Supreme Court, the appeal in this cause shall be dismissed, and no writ of error shall be prosecuted in this suit.   But if said county of Cass, State of Illinois, fails to vote to take said amount of stock, and to subscribe for the same, before said next term, the cause shall stand for trial at the said next term of this court."

How this can be held to be an agreement that the subscription shall be made, we fail to comprehend.   It is provided what shall be done if the subscription is made, but there is no undertaking to make the subscription.   The subscription not having been made, the appeal ought not to have been dismissed; but if it was dismissed, the terms of the agreement are not thereby changed, and all that can be said is, the appeal was improperly dismissed.

For the reasons given, the judgment below is affirmed.

*Judgment affirmed.*