## County of Williamson v. Farson, Leach & Co.

1. MUNICIPAL BONDS—*Where Payable, in the Absence of Statutory Authority.*—In the absence of statutory authority, bonds issued by a municipality are payable at the treasury of the municipality.

2. SAME—*Interest, After Notice to Present for Payment.*—Where no actual notice is given to the holder of an interest-bearing municipal bond, which is overdue, to present it for payment and surrender, and there is no statutory method provided for the calling in of such bond and fixing a day beyond which interest will not run, interest will continue to accrue on such obligation in the same manner as upon an ordinary promissory note.

3. SAME—*What Will Not Relieve a Municipality from Payment.*—The rule that a municipal corporation is not required to seek its creditors in order to discharge its debts, does not relieve it from the payment of its legal obligations according to their terms, at the time and place provided in them.

Debt, on municipal bonds. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the October term, 1901. Reversed, and judgment in this court. Opinion filed March 20, 1902.

**Statement by the Court.**—Appellant and appellees, on the day of its date, entered into the following agreement in writing, to wit:

" It is agreed by and between the county of Williamson, in the State of Illinois, and Farson, Leach & Co., of the city of Chicago, Illinois, that the $100,000 of Williamson county four and one-half per cent bonds, numbered from 1 to 100 inclusive, shall be held in escrow by the National Bank of Illinois, Chicago, and to be delivered to Farson, Leach & Co., in exchange for the former issue of bonds of like amount and number, dated January 1, 1872, bond for bond. The said old bonds may be received after being canceled, and in case of bonds not canceled, said National Bank of Illinois shall cancel same and forward to the Auditor of Public Accounts at Springfield, Illinois.

Dated January 23rd, 1895.

THE COUNTY OF WILLIAMSON,
State of Illinois,
By M. J. Turner,
Chairman of the County Board.
FARSON, LEACH & Co.

County of Williamson v. Farson, Leach & Co.

We hereby acknowledge receipt of the above $100,000 of bonds, and agree to deliver in accordance with above agreement.

Dated January 23rd, 1895.

THE NATIONAL BANK OF ILLINOIS,
Wm. A. Hammond, 2nd Vice Pres't.

We agree to deposit in payment for the bonds mentioned above, one hundred thousand dollars, with six hundred sixty-six and 67-100 dollars interest, with the American Exchange National Bank, New York City, by February 1st, 1895, to pay for old bonds. We acknowledge receipt of six hundred sixty-six and 67-100 dollars in full of one month's interest on said old bonds.

Dated January 23rd, 1895.

FARSON, LEACH & CO.

The county of Williamson acknowledges receipt of three hundred seventy dollars premium on said bonds.

Dated January 23rd, 1895.

THE COUNTY OF WILLIAMSON,
By M. J. Turner,
Chairman of Co. Board."

Pursuant to this agreement and by a verbal understanding between the parties to it, appellees caused to be published on January 25, 28 and 31, 1895, in the New York Daily Tribune, appellant agreeing to pay the cost of publication, the following notice, to wit:

"CALL FOR BONDS.

MARION, ILL., January 19, 1895.

Notice is hereby given that Williamson County, Illinois, eight per cent bonds, dated January 1, A. D. 1872, Nos. 1 to 100 inclusive, will be paid on or after February 1st, 1895, upon presentation at the American Exchange National Bank, or the office of Farson, Leach & Co., New York City, interest to cease on above date.

J. A. FELTS, County Clerk,
Williamson County, Illinois."

The old bonds referred to in the agreement and the eight per cent bonds mentioned in the notice are the same, and are of the sum of $1,000 each, dated January 1, 1872, due twenty years from date and payable at the American Exchange National Bank in the city of New York, on the surrender of each bond, with interest at eight per cent

per annum, payable at the same place in half-yearly payments in each year, "until the principal is paid, according to and upon the surrender of the proper interest coupon hereto annexed."

Appellees failed to make the deposit, as required by the agreement with the American Exchange National Bank, but they advised that bank that appellees had funds to pay these eight per cent bonds, and asked the bank if any such bonds were presented at its banking house to refer the parties so presenting them to appellees. This request, as the evidence shows, was complied with by the bank, and under the arrangement so made appellees paid fifty-eight of said eight per cent bonds from January 26th to April 6, 1895, and from August 6, 1895, to February 16, 1896, they paid the remaining forty-two of said bonds. On and after February 1, 1895, appellees were prepared to and did cash all of said bonds whenever they were presented at their New York office. The bonds so paid by appellees were delivered by them to the National Bank of Illinois in exchange for the new four and one-half per cent bonds of a like amount, and the old bonds were subsequently duly canceled at the state auditor's office of Illinois at Springfield. It appears that the American Exchange National Bank has two departments, known as the coupon and collection departments, which are entirely separate, so far as concerns the manner of doing business. When a bond or coupon is sent to the bank for collection, it goes to the collection department, and by that department is presented for payment wherever it is made payable, or where it is known the paper will be paid. This department presents to the coupon department, the same as if it were a different institution. The state treasurer of Illinois during 1895 had an office in the Bank Building at New York, where he attended to the payment of all interest on bonds of the State of Illinois. This fact was known to the collection department of the bank. The coupon department of the bank only was informed that these bonds and interest to February 1, 1895, would be paid on presentation to appellees.

Thirty-nine of said bonds were presented by the bank's collection department, or by the holders of the bonds, to the Illinois State Treasurer at his New York office, for the collection of interest which had accrued thereon to July 1, 1895, and said treasurer, for appellant and with its funds, paid such interest on different dates from the 1st to the 4th of July, 1895, amounting in all to the sum of $1,560. To recover this amount and interest from January 1, 1896, this suit was brought by appellant against appellees. On a trial before the court without a jury a finding and judgment for defendants was entered, to reverse which this appeal is taken, and judgment for appellant is asked in this court for the amount claimed.

W. W. CLEMENS, attorney for appellant.

JUDSON F. GOING, attorney for appellees.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

A preliminary question is presented because of the ruling of the trial court in excluding certain private acts of the legislature of this State of 1867 and 1869, which respectively authorized appellant to issue said bonds in payment of a subscription for stock of the Murphysboro & Shawneetown R. R. Co., thereafter changed to the Carbondale & Shawneetown R. R. Co., and made valid and binding certain acts of Williamson county done in preparation for the issuing of the bonds, and provided that the interest coupons thereof should be paid at the county treasury of appellant, or in the city of New York, as might be desired by the holder or holders thereof.

This evidence we regard as immaterial to any issue in the case. The basis of the appellees' claim is the contract of sale of the new, or four and one-half per cent bonds, set out in the statement, and its alleged breach. No question is made as to the validity of any of the bonds in any respect. The only question that, in our opinion, could arise on which this evidence would throw any light, is as to the place of

payment of the bonds and interest. In the absence of statutory authority, the bonds would be payable at the county treasury of Williamson county. Pekin v. Reynolds, 31 Ill. 529; Johnson v. Stark Co., 24 Ill. 75.

This evidence shows that the place of payment mentioned in the bonds was authorized by statute, but since no question is made in that regard, we are unable to see wherein it is material. The real question to be determined is what damage, if any, has appellant suffered by reason of the failure of appellees to deposit the money they agreed to place with the American Exchange National Bank, the place where the bonds and interest thereon were made payable. For a determination of this question we must look to the contract of the parties and what they did under it. If appellant has not been damaged by appellees' breach of their agreement, then it can not recover. The agreement shows that appellees purchased the new four and one-half per cent bonds of appellant—not the old eight per cent bonds. The new bonds were placed in escrow with the National Bank of Illinois to be delivered to appellees when the old bonds were paid. Appellees agreed to deposit with the Exchange Bank $100,666.67 to pay for the old bonds, and of this amount they received $666.67 from appellant, being for one month's interest from January 1 to February 1, 1895. They also paid a premium of $370 for the new bonds. Appellant agreed to call in the old bonds for payment and cancellation. Appellees made no agreement to get in the old bonds, but in that regard agreed only that they would see to the publication of the notice calling them in, the appellant to pay the expense thereof. The old bonds, bearing interest at eight per cent per annum until the principal should be paid, were legal obligations of appellant which were in no wise assumed by appellees. The payment of the January, 1895, interest by appellant to appellees was a recognition of appellant's liability to pay this interest, and inferentially any other interest which might thereafter accrue. Certainly there was no undertaking by appellees to pay any interest than for the one month which

they received from appellant. Appellees did not deposit the money as agreed, but instead notified the Exchange Bank to refer any holders of bonds presented to it for payment to them at their New York office. They kept funds on hand at all times at their office for the payment of the bonds and, so far as any evidence in this record shows, paid every bond which was presented to the Exchange Bank or to them for payment. Whenever a bond was presented to the Exchange Bank for payment, the holder was referred to appellees, and it was paid. Appellees have taken up all the old bonds and they have been duly canceled, and have thus, in effect, done all that would have been accomplished by depositing their money with the Exchange Bank. Thirty-nine bonds, for some reason not explained by the evidence, were not presented to the Exchange Bank until on or after July 1, 1895, and these, it seems, were presented to the collection department only—not to the coupon department, where the holders would have been directed to appellees. Of this number the collection department of the bank collected from the state treasurer of Illinois the interest on seventeen bonds, or $680. Either the bank, through its collection department, or the holders of the other twenty-two of these bonds, collected of said treasurer the interest on them in July, 1895, amounting to $880. It is not shown that any of these thirty-nine bonds was ever presented to the Exchange Bank or to appellees at any time for payment until after this interest was paid, or that the holders thereof had any notice of the calling in of the bonds before this interest was paid. There is no evidence that appellent gave the state treasurer of Illinois any notice that the bonds were called in or that he should not pay them. It should be borne in mind that the interest on these bonds became due January 1st and July 1st; that when the notice was given calling them in, nearly one month had elapsed from the time when the January interest was due, and that, considering the large number of the bonds and the many different holders, it is not surprising that thirty-nine of the bonds were not presented for pay-

ment until after July 1, 1895. There is in the evidence no explanation as to why these bonds were not presented for payment until after this interest was paid. The only reasonable explanation would seem to be that the holders either did not see the call, or thought they could collect another five months' interest by not presenting them until the next interest day. If such was the case, appellees are in no way to blame. They held themselves in readiness to pay, and did take up and cause to be canceled all the bonds as fast as they were presented. If any one was in fault it was appellant, either in failing to get actual notice to the bondholders, or in failing to notify the state treasurer that the bonds had been called in, and not to pay the interest on them after February 1, 1895. It is, however, contended by appellant that if the deposit of money had been made with the Exchange Bank, as agreed by appellees, and reasonable notice given of that fact, then interest on the bonds would have ceased to run after February 1, 1895. The trial court refused to hold propositions of law to that effect, and we are not prepared to hold that the ruling was not right. The learned counsel for appellant cites no authority to sustain the contention, nor have we been able, in the time at our disposal, to find any such authority. What is reasonable notice, counsel does not undertake to inform the court, and it might well be held that the publication three times in a daily newspaper, the first publication being only six days before, and the last one day before, February 1, 1895, the date when counsel claims the interest would have ceased, was not reasonable notice. If the notice was not reasonable, and we think it was not, then assuming that the law is as claimed, appellant was not injured by the failure of appellees to make the deposit, because it was clearly liable to pay the extra five months' interest, which was paid by the state treasurer, by the terms of the bonds.

From such examination as we have been able to make of the question, the authorities seem to be that if no actual notice is given to the holder of an interest-bearing municipal bond, which is overdue, to present it for payment and

County of Williamson v. Farson, Leach & Co.

surrender, and there is no statutory method provided for the calling in of such bond and fixing a day beyond which interest will not run, interest will continue to accrue on such an obligation in the same manner as upon an ordinary promissory note of any private person. Dillon on Municipal Corp'ns, Sec. 506 and note; 2 Beach on Pub. Corp'ns, Sec. 921; Hummel v. Brown, 24 Pa. St. 310; Read v. City of Buffalo, 74 N. Y. 463.

As has been shown, these bonds were legal obligations of appellant, and by their terms were interest-bearing until the principal should be paid, the interest being payable January 1st and July 1st of each year. The interest had been paid to January 1, 1895, when the contract with appellees was made. Appellant recognized its liability to pay interest by paying the interest for the month of January, 1895, to appellees, and we can perceive no reason, either in morals or under the law, why it was not liable to pay all interest which accrued on these bonds up to July, 1895, without a showing that actual notice of their being called in came to the holders before that date.

The rule seems to be settled that a municipal corporation in this State is not required to seek its creditors in order to discharge its debts (People v. Tazewell Co., 22 Ill. 147, and Pekin v. Reynolds, 31 Ill. 529), and that the creditor must make demand, when payment is desired, at its treasury. This rule, however, as we view it, does not relieve the corporation from the payment of its legal obligations according to their terms and at the time and place thereby provided. The holders of the bonds were not required to present them, unless they received actual notice, until the interest day, July 1st, when the interest was in fact paid.

In the Read case, *supra*, city warrants which bore interest three months from date, were held to continue to bear interest for nearly four years after the date fixed by resolution of the city council for their payment, and publication of notice in the official paper of the city to holders that interest would cease on the date fixed, although the necessary funds for payment were ready prior to and on the date

fixed, and that the fact that the money was ready at all times, to make payment, did not relieve the city from the obligation to pay interest.

There being no proof that any of the holders of these thirty-nine bonds ever had actual notice of the calling in of the bonds, and there being no statute in this State on the subject, then clearly, under the evidence in this record, appellant was liable for the six months' interest paid by the state treasurer, and can not look to appellees to refund to it any part thereof except the interest for January, 1895, which was paid to appellees. As to this month's interest, the evidence is clear that the state treasurer paid it on the thirty-nine bonds, and the only evidence which would indicate that it was paid by appellees is that of F. W. Leach, who says appellees did pay all these bonds on presentation. The evidence also shows that appellees received forty-two of the old bonds on and after August 6, 1895. It is quite improbable that they paid any interest which had already been paid by the state treasurer. Appellees were bound by their contract with appellant to pay this month's interest. They received the money from appellant for that purpose, and in equity and good conscience should refund it to appellant.

The judgment of the Circuit Court is reversed and judgment will be entered in this court in favor of appellant and against appellees for the January, 1895, interest on said thirty-nine bonds paid by the state treasurer of Illinois, being the sum of $260. Appellant will also recover its costs in this court and in the Circuit Court. Reversed, and judgment here.