## REA *et al. v.* CITY OF LaFAYETTE *et al.*

When several distinct and independent propositions for the issuing of bonds
by a municipality are submitted to the qualified voters of a town or
city, provision should be made in the submission for a separate vote
upon each.   They can not be lawfully combined and submitted to the
voters as a single question.

Argued April 20,—Decided June 9, 1908.

Validation of bonds.   Before Judge Wright.   Walker superior
court.   February 21, 1908.

*R. M. W. Glenn* and *Lumpkin & Wright,* for plaintiffs in error.

*James P. Shattuck, John W. Bale,* and *W. H. Ennis, solicitor-
general,* contra.

FISH, C. J.   Under and by virtue of a resolution of the mayor
and city council of LaFayette and a notice published in pursuance
thereof, an election was held in that city, the purpose of which,
as declared in the resolution and notice, was, "to determine the
question whether said city will issue bonds in the aggregate sum of
forty thousand dollars, . . said sum to be expended as follows,
to wit:   For the purpose of establishing and maintaining a sys-
tem of waterworks, twenty-five thousand dollars.   For the purpose
of establishing and maintaining a system of electric lights, ten
thousand dollars.   For the purpose of improving and extending
the public school of said city, and providing adequate accommoda-
tions for school patrons and children of said city, five thousand
dollars."   The resolution and the notice, after setting forth the
numbers and denomination of the bonds, the rate of interest they
should bear, and when interest should be payable, and the scheme
or plan to be followed in fixing the dates at which, and the annual
installments in which, they should respectively mature, provided
that "those desiring to vote in favor of such bonds should place
on their ballots 'For bonds,' and those desiring to vote against

such bonds should place on their ballots the words 'Against bonds.'"
The result of the election was declared to be in favor of the is-
suance of the bonds. A proceeding was instituted, under the
statute applicable to such cases, for the purpose of validating the
issue of the bonds, to which certain citizens of the city became
parties by intervention, and interposed various objections to the
validation. Upon the hearing the judge overruled these objections
and passed an order of validation, and to this judgment the inter-
venors excepted.

One of the grounds upon which the intervenors claimed that
the issue of the bonds could not be lawfully validated was that the
resolution and notice under which the election was called and
held did not provide for a separate vote on each of the three prop-
ositions submitted to the voters. This presents a question which
has never been determined by this court; but the rule is well settled
elsewhere, and upon what we think sound principles, that two or
more separate and distinct propositions can not be combined into
one and submitted to the voters of a county or a municipality as a
single question, so as to have one expression of the voter answer
all of them. Supervisors of Fulton County *v.* Mississippi & Wa-
bash R. Co., 21 Ill. 338; People ex rel. Peoria & Oquawka R. Co.
*v.* County of Tazewell, 22 Ill. 147; Clarke *v.* Supervisors of Han-
cock County, 27 Ill. 305; McMillan *v.* Lee County, 3 Iowa, 311;
State ex rel. City of Bethany *v.* Allen, 186 Mo. 673 (85 S. W.
531) ; McBryde *v.* City of Montesano, 7 Wash. 69 (34 Pac. 559) ;.
Hensly *v.* City of Hamilton, 3 Ohio Cir. Ct. R. 201; Lewis *v.* Com-
missioners of Bourbon County, 12 Kan. 186. Each proposition
submitted to the voters should stand or fall upon its own merits,.
without, on the one hand, receiving any adventitious aid from
another and perhaps more popular one, or, on the other hand, hav-
ing to carry the burden of supporting a less meritorious and popu-
lar measure. No voter should be compelled, in order to support
a measure which he favors, to vote also for a wholly different one
which his judgment disapproves, or, in order to vote against the
proposition which he desires to defeat, to vote also against the one
which commends itself to the approval of his judgment. When
he is thus compelled, if he votes at all, there is something closely
akin to coercion when his ballot is cast. The constitution of this
State declares that "No law or ordinance shall pass which refers

to more than one subject-matter." The obvious purpose of this constitutional provision is to prevent combinations by which different and distinct matters of proposed legislation are presented as one measure, whereby each of them gains strength and support which it would not have if it were presented solely upon its own merits and voted upon separately. While this provision of the constitution is not violated when several distinct and independent propositions are combined and presented as one question to be decided by the qualified voters of a municipality or county, yet such a submission to the voters of separate and distinct propositions is clearly contrary to its spirit and violative of the principle which it contains. Why should it be lawful to combine different and independent measures, the adoption of which is dependent upon the votes of the qualified electors, and submit them to the voters, for their adoption or rejection, as a single question, when the people have declared in their constitution that such a course shall not be pursued in the legislature when laws are to be enacted? The evils to be prevented by prohibiting such a practice are as apparent in the one case as in the other. There may in a given community be such a strong sentiment in favor of incurring a public debt for a particular purpose,—for instance, as providing adequate and suitable accommodations for the public schools,—that by combining a proposition of this popular character with one to create a public debt for a wholly different purpose, which would not as an independent measure commend itself to the unbiased judgment of the voters, the unpopular proposition may obtain the requisite number of votes to insure its adoption. On the other hand, the sentiment against the last-mentioned proposition might be so strong as to cause the voters to defeat the one in favor of the public schools, although if standing alone it would have received their hearty support. To present both propositions in a single submission, thus rendering the success of the one dependent upon the success of the other, or the defeat of the one dependent upon the defeat of the other, is clearly unfair to the voters, and not at all conducive to a free and untrammelled expression of public sentiment as to the merits of either. And when the number of separate and distinct questions to be combined and embraced in a single submission is increased, there is a corresponding increase in the unfairness of the mode of submission and of the chances that no true

expression of the will of the people can be obtained. Another evil which might result from holding such a practice to be lawful is, that a popular and meritorious measure might be purposely fore-doomed to defeat by making its success dependent upon the adoption of some other measure known to be obnoxious to the people. Some of the courts, in condemning the practice of combining two or more separate and distinct propositions in a single submission to the voters, have used strong and vigorous language to express their views upon the question. Thus, in Supervisors v. Mississippi & Wabash Railroad Co., supra, in which the propositions submitted to the voters were, that the county should subscribe a given amount to the stock of one designated railroad company, and that it should subscribe a like amount to the stock of another named railroad company, which propositions had been embraced in a single sub-mission to the electors, Breese, J., said: "This is not only not pursuant to the law, but is manifestly unfair. All elections, as well for measures as men, should be perfectly free, uninfluenced by any consideration other than the merits of the individual man or measure proposed. We boast of the freedom of the elective fran-chise; should we not strive to swell the boast by its purity also? A single, isolated measure, such as a railroad, may not unite a ma-jority of a county to whom it is proposed. It may favor, if con-structed, one portion of a county more than another, and thereby be prevented from receiving a clear majority vote, such as the law clearly contemplates shall be given. Is it fair, in order to accom-plish this object, to attach another measure to it, to be voted on at the same time, which may benefit the opposing portion of the county? The law never intended that two roads should be coupled together, and the people forbidden to vote for one if they did not also vote for the other, the one road being really a bribe offered for votes for the other. The truth is the voters of Fulton have never had an opportunity to vote, and never have voted this subscription [the one to the railroad company involved in that case]; for the question was at no time distinctly before them. The question before them was, will you vote for a subscription to two roads? Neither road has received the approving vote of the people, and until that is done, until the naked single question shall be fairly presented to those voters, they ought not to be bound, or inju-riously affected, by any such jockeying management and logrolling.

By this system, condemned as it has always been, by the moral sense as well as sense of justice of the whole country, it should at this day find no favor in the courts. This tacking of one measure upon another is unjust in another view, as it gives the County Court power to weigh down a popular single measure, by attaching odious measures to it, and thus virtually depriving the people of their right to vote on the one measure, the success of which would greatly promote their interests. Such maneuvering should be condemned everywhere, as unfair and unjust, and we so regard it."

In McMillan v. Lee County, 3 Iowa, 311, Stockton, J., delivering the opinion, said: "The law, in our opinion, has provided no such mode of submitting these questions to the vote of the people. The evils which might be permitted to grow up under such a system are so obvious and apparent that any extended discussion of the question by us would be superfluous. It may be sufficient to suggest that if it were allowed, measures in themselves odious and oppressive might by means of it become fastened upon a county, which in no other way could have obtained the number of votes requisite to insure their adoption but by being connected with some other proposition, which commended itself to the favor and suffrages of the people, by its inherent merits and popularity. They must be adopted or rejected together. After the same manner, a measure desirable and necessary to a people of a county may, when offered for their adoption, be rejected by their votes and fail to become a law, by reason of its connection with some other measure or measures unpopular and uncalled for. In either case there is an evil. An unpopular measure may be forced upon an unwilling people, or a necessary and desirable one may be denied them, in despite of their wishes. It is sufficient for us to say that the law, in our opinion, intended to provide for no such system of contradictions. A measure wise and salutary in itself needs no adventitious assistance to recommend it to the suffrages of the people, or to insure its adoption by them. It may demand that its enactment into a law shall be made to depend upon their sanction alone. A pernicious measure is not entitled to such assistance, and should be permitted to stand or fall by its own inherent merits or defects." In Lewis v. Commissioners of Bourbon County, supra, Brewer, J., said: "It may be conceded

that two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined, and the real will of the people overslaughed. By this combination an unpopular measure may be tacked on to one that is popular, and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation' for the benefit of a few. Things odious and wrong in themselves may receive the popular approval, because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections. That aims to secure freedom of choice, not merely between parties, but also in respect to every office to be filled, and every measure to be determined. A voter at a State election would be shocked to be told that because he voted for a person named for Governor on one ticket, he must vote for all other persons named thereon; or that voting for one person, he was to be understood as voting for all. He would feel that his freedom of choice was infringed upon. None the less so is it by such a submission as this." Then, after quoting some of the "vigorous language" of Breese, J., above quoted, citing the other Illinois cases which we have cited above, and quoting some of the language of Stockton, J., in the Iowa case above referred to, he said: "A mode of submission which is so obviously unjust, so contrary to the spirit of election, and has received such condemnation from the courts will not be imputed to the intention of the legislature, unless necessarily demanded by the language used."

The language employed in our own statute neither requires nor authorizes us to impute such an intention to the legislature of this State. The statute provides: "When any county, municipality or division shall desire to incur any bonded debt," as prescribed in the constitution, "the election required shall be called and held as follows, to wit: The officers charged with levying taxes, contracting debts, etc., . . shall give notice for the space of thirty days next preceding the day of the election, in the newspaper in which the sheriff's advertisements for the county are pub-

lished, notifying the qualified voters that on the day named an election will be held to determine whether bonds shall be issued by the county, municipality or division.   In said notice he shall specify what amount of bonds are to be issued, for what purpose, what interest they are to bear, how much principal and interest to be paid annually, and when to be fully paid off." Pol. Code, §377. "Said election shall be held at all the voting or election precincts within the limits of the county, municipality or division, and shall be held by the same persons, and in the same manner, under the same rules and regulations that elections for officers of said county, municipality or division are held, and the returns shall be made to the officers calling or ordering the election, who shall, in the presence and together with the several managers (who bring up the returns), consolidate said returns and declare the result." Ib. §378.   The next section provides that, "When said notice is given and said election held in accordance with the preceding section, if the requisite two thirds of the voters of the county," etc., "at said election vote for bonds, then the authority to issue the bonds in accordance with" the provisions of the constitution is given to the proper officers of the county, etc.   There is nothing here which either expressly or by necessary implication authorizes several separate and distinct propositions for the issuing of bonds to be tacked together and submitted to the voters as but a single question, to be answered by each voter when he deposits his ballot.   As such a method of submission is contrary to that freedom of choice on the part of the voters, and the fair and free expression of the public judgment, which should prevail in all elections, and is likewise against the spirit of our State constitution, it should not be permitted by the courts, when they are not constrained to do so by the statute in reference to such elections. Our conclusion, therefore, is that the court erred in overruling the objections of the intervenors and granting the order of validation.

The objection to validation which we have been considering being sufficient to accomplish the purpose of the intervenors and, therefore, to require a reversal of the judgment of the court below, we deem it unnecessary to deal with any of the other objections which were presented in the trial court.   We will say, however, in this connection, that the question as to the sufficiency of

the period of time during which the notice of the election was published prior to the day appointed for the election, and the question based upon the limitations in the charter of the city upon its taxing power, each of which has been forcibly presented in the argument before this court, for its consideration, do not seem to have been clearly made by the pleadings of the intervenors in the court below, nor in the bill of exceptions.

*Judgment reversed. All the Justices concur.*