27765, 27772. CARTER et al. v. BURSON; and vice versa.

ARGUED MARCH 13, 1973 — DECIDED APRIL 25, 1973.

*Arthur K. Bolton, Attorney General, Alfred L. Evans, Jr., J. Lee Perry, Assistant Attorneys General, Harold N. Hill, Jr., Deputy Assistant Attorney General,* for appellants.

*Byrd, Groover & Buford, Garland T. Byrd, Denmark Groover, Jr.,* for appellee.

HAWES, Justice. This litigation involves one phase of the State Governmental Reorganization Program instituted by the Governor and implemented by legislation passed at the 1972 session of the general assembly, and further implemented by the vote of the people in approving certain proposed constitutional amendments submitted to them at the general election held in November, 1972. Among the changes proposed was the abolition, as the appellants contend, of the office of State Treasurer, which had theretofore been an office provided for by the Constitution. William H. (Bill) Burson was, in 1972, the incumbent in that office, having been elected thereto for a 4-year term beginning January 1, 1971, at the general election held in November, 1970. On September 26, 1972, Burson filed a complaint in the Superior Court of Fulton County, naming as defendants therein the Governor, the Secretary of State and the Attorney General. In count 1, plaintiff sought a temporary and permanent injunction against the submission of an amendment to the Constitution proposed by Senate Resolution 313 on the ground that same violated the provisions of Art. XIII, Sec. I, Par. I of the Constitution of the State of Georgia of 1945 (Code Ann. § 2-8101) which requires that when more than one constitutional amendment is submitted at the same time they shall be so submitted as to enable the electors to vote on each amendment separately. Plaintiff also sought in

count 1 a declaratory judgment that even if said amendment was submitted and ratified the same would be illegal and would not become a part of the Constitution of the State of Georgia. In count 2, plaintiff sought a declaratory judgment that even if said amendment is legal and is ratified by the people, it does not have the effect of abolishing the office of State Treasurer since the intent to accomplish such result is not clear. In count 3, plaintiff attacked the provisions of §§ 408, 408-A and 408-B of the Act approved April 6, 1972 (Ga. L. 1972, pp. 1015, 1037-1038). That Act known as the "Executive Reorganization Act of 1972" undertook in those sections attacked by the plaintiff to transfer the functions of the State Treasurer and Treasury Department to the fiscal division of the Department of Administrative Services created by Chapter 4 of that Act. In count 3, plaintiff sought a declaratory judgment with respect to the validity of that Act on the ground that the same violated the constitutional prohibition against the passage of any Act referring to more than one subject matter and containing matter different from that expressed in the caption or title thereof.

Senate Resolution 313 proposed an amendment to the Constitution of the State of Georgia "so as to remove the Treasurer as an elected constitutional officer." Section 1 of that resolution proposed an amendment to Art. V, Sec. II, Par. I of the Constitution relating to "executive officers, how elected," so as to strike therefrom the word "Treasurer." Section 2 of the resolution proposed an amendment to Art. V, Sec. II, Par. IV of the Constitution relating to "qualifications" of persons eligible to hold various "State house" offices by striking therefrom the word "Treasurer." Art. VII, Sec. III, Par. IX of the Constitution relates to the State sinking fund and provides that such fund may be invested in bonds of the State and also in bonds and securities of the Federal Government but that if such bonds are not available for

purchase the sinking fund may be loaned *"by the Treasurer of the State,* with the approval of the Governor, *upon terms to be fixed by such officials and* when amply secured by bonds of the State or Federal Government." Section 3 of that resolution proposed to strike the language italicized from the paragraph and to add the following phrase at the end of the paragraph: "upon such conditions as may be provided by law." Article VII, Sec. IX, Par. IV of the Constitution as amended provides that, except as provided in that paragraph, appropriations for each department, officer, bureau, board, commission, agency or institution for which appropriation is made, shall be for a specific sum of money and no appropriation shall allocate to any object, the proceeds of any particular tax or fund as a part or percentage thereof. Sub-paragraph (b) of that paragraph which was originally added to the section by an amendment proposed in 1951 and ratified on November 4, 1952, contained a provision that, "an amount equal to all money derived from motor fuel taxes received by the State *Treasurer* in each of the immediately preceding fiscal years, . . ." is appropriated for the purpose of maintaining an adequate system of public roads and bridges in the State. The italicized word, "Treasurer," contained in the foregoing quotation was proposed to be stricken by Section 4 of Senate Resolution 313, and a further provision relating to grants to counties for aid in county road construction which authorized the State Treasurer to make such grants under certain conditions was amended by striking the words, "the State Treasurer to make." The formula under which the proposed constitutional amendments embodied in this resolution was submitted to the people was, "Shall the Constitution be amended so as to delete the name and office of Treasurer from the Constitution?" to which question the voters were afforded the opportunity to vote "Yes" or "No."

Senate Resolution No. 48 proposed the amendment to

the Constitution by striking therefrom Paragraphs I, II, III, IV and IX of Section III of Art. VII of the Constitution and inserting in lieu thereof new paragraphs numbered I, II, III, IV and IVA, the texts of which are set out in the resolution. That amendment is not under attack in this proceeding. It is lengthy and contains several references in the text of the proposed new paragraphs to "State Treasury" and to the "State Treasurer."

The "Executive Reorganization Act of 1972" undertakes a general and comprehensive revision of the organization and functions of the executive department of the State Government. It abolishes numerous non-constitutional executive offices and established in lieu of those abolished some 25 departments of State government under which all executive offices, boards, commissions, committees, agencies, departments, bureaus and instrumentalities of the executive branch of the State government are to function and to which are allocated by the Act of the administration of the State government.

Upon presentation of the complaint to the Presiding Judge of the Superior Court of Fulton County, a restraining order was issued restraining the defendants from advertising the constitutional amendment until further order of the court. That order was issued on September 26, 1972. Thereafter, on September 27, 1972, the attorney general tendered to the trial judge who had issued the temporary restraining order a motion for a supersedeas in order that the advertising of the constitutional amendment might proceed, since because of the time limitations involved and the necessity for advertising once a week for three weeks prior to the general election to be held on November 7, 1972, the failure to advertise would invalidate the vote on the constitutional amendment and would render the questions presented by the case moot. The trial court refused to grant the supersedeas, and this court

thereafter on October 2, 1972, granted a supersedeas, there *then* being pending in this court an appeal from the grant of the temporary restraining order. That appeal was later dismissed as being moot. See *Carter v. Burson,* 229 Ga. 748 (194 SE2d 472). Thereafter, at the general election held on November 7, 1972, the constitutional amendments submitted by Senate Resolutions 313 and 48 were ratified.

Upon the return of the case to the superior court, the plaintiff filed a motion for a judgment on the pleadings based upon the allegations of the complaint admitted by the defendants and based upon facts which, though not admitted, are deemed to be judicially known. After argument and the submission of briefs on that motion, the trial court on December 15, 1972, passed an order sustaining plaintiff's contention made in count 2 of his complaint and holding that the intention to abolish the office of State Treasurer was not clearly manifested by the wording of Senate Resolution 313, especially when the same is considered in connection with the wording of Senate Resolution 48. The court declined to pass on any of the other questions raised by the complaint respecting the validity of the submission of the constitutional amendment under Senate Resolution 313; respecting the legality of the language of the submission on the ballot; and, respecting the constitutionality of the Act approved April 6, 1972 (Ga. L. 1972, p. 1015 et seq.). The defendants appealed from that judgment and the plaintiff has filed a cross appeal complaining of the refusal of the trial court to sustain his other contentions.

■ In the main appeal, the appellants contend that the plaintiff has failed to make out a case for declaratory judgment. There is no merit in this contention. An actual controversy exists as to whether or not the plaintiff is entitled to and obligated to exercise the functions of State Treasurer under the law as it now exists. If, under the law, he is obligated to perform those functions his failure

to do so subjects him to the risk of legal sanctions. The record before this court unquestionably shows a justifiable controversy which is ripe for judicial determination with interested parties asserting adverse claims upon a state of facts which have already accrued. The complaint was not subject to dismissal for failure to state a claim for declaratory relief. *Brown v. Lawrence,* 204 Ga. 788, 790 (51 SE2d 651); *Publix-Lucas Theaters v. City of Brunswick,* 206 Ga. 206, 208 (56 SE2d 254); *Sanders v. Harlem Baptist Church,* 207 Ga. 7 (2) (59 SE2d 720); *Hansell v. Citizens & Southern Nat. Bank,* 213 Ga. 205, 209 (98 SE2d 622); *Woodside v. State Hwy. Dept.,* 216 Ga. 254, 257 (115 SE2d 560).

■ The authority of the people to abolish the office of State Treasurer by amending the Constitution cannot seriously be contested. *Rivers v. Hailey,* 199 Ga. 38 (1) (33 SE2d 310). The plaintiff conceded this point in the trial court and no issue is presented in this appeal as to this. We are thus presented with the simple question presented by the main appeal: "Was the ratification by the people of the constitutional amendments submitted by Senate Resolution 313 effective to accomplish the abolition of the office?" The trial court held that the intention of the legislature and of the voters to abolish the office of State Treasurer is not clear by reason of the fact that, though Senate Resolution 313, when ratified, deleted the name and office of Treasurer from the Constitution, Senate Resolution 48, when ratified, had the effect of re-instating the office since it in several places referred to the State Treasurer and purported to impose upon that office certain duties. Every public office is the creation of some law, either statutory or constitutional in origin. It continues only so long as the law to which it owes its existence remains in effect. Therefore, when the law is authoritatively abrogated, that is, repealed by a legislative body having authority to act thereon, the office no longer exists. 67 CJS 121,

Officers, § 10, Note 57, citing Bennett v. City of Longview, 268 S. W. 786 (Tex. Civ. App., 1925). The amendments proposed by Senate Resolution 313 clearly had the effect of abolishing the office of State Treasurer. While no particular language is necessary to create an office, the intent to create it must be manifested clearly by the language used. The mere use in another constitutional amendment concurrently ratified by the people of the words, "State Treasurer," and the designation of duties along with the use of such words does not clearly manifest such an intent. Cf. *Cason v. McLeod,* 168 Ga. 702, 704 (148 SE 584). We hold that the trial court erred in holding that the adoption of the constitutional amendments proposed by Senate Resolution 313 did not have the effect of abolishing the office of State Treasurer.

■ The plaintiff attacked the constitutional amendment on the ground that the same violated Art. XIII, Sec. I, Par. I of the Constitution of the State of Georgia of 1945 (Code Ann. § 2-8101), as amended, on the ground that it violates the inhibition embodied in the last sentence thereof which provides that, "When more than one amendment is submitted at the same time they shall be so submitted as to enable the electors to vote on each amendment separately." Plaintiff contends, in this connection that Senate Resolution 313 contained four separate amendments to the Constitution dealing with (1) the manner of the election of State Treasurer; (2) the qualifications of the State Treasurer; (3) the manner of protecting the sinking fund of the State of Georgia; and, (4) the manner of disbursing and handling grants to counties for aid in county road construction and maintenance. The trial court overruled this contention and cross appellant assigns this ruling as error in one ground of his enumeration of errors.

There is no merit in this contention. This court has analogized the provisions of the Constitution respecting the inhibition against submitting more than one question

at a time to the vote of the people to the constitutional inhibition against multiple subject matter legislation. See *Hammond v. Clark,* 136 Ga. 313, 327 (71 SE 479, 38 LRA (NS) 77). The test of whether an Act or a constitutional amendment violates the multiple subject matter rule is whether all of the parts of the Act or of the constitutional amendment are germane to the accomplishment of a single objective. *Welborne v. State,* 114 Ga. 793, 820 (40 SE 857). If so, it does not violate the rule; otherwise, it does. It may well be observed that the courts have applied a similar principle with respect to the submission to the voters of the question of the issuance of bonds, it being held that the question of whether bonds should be issued for multiple purposes should not be submitted to the voters to be passed on in a single vote or ballot. *Rea v. City of LaFayette,* 130 Ga. 771 ( 61 SE 707). The rationale upon which this rule rests was well summarized by this court in the latter case where it was said (beginning on page 772): "Each proposition submitted to the voters should stand or fall upon its own merits, without, on the one hand, receiving any adventitious aid from another and perhaps more popular one, or, on the other hand, having to carry the burden of supporting a less meritorious and popular measure. No voter should be compelled, in order to support a measure which he favors, to vote also for a wholly different one which his judgment disapproves, or, in order to vote against the proposition which he desires to defeat, to vote also against the one which commends itself to the approval of his judgment. When he is thus compelled, if he votes at all, there is something closely akin to coercion when his ballot is cast. The Constitution of this State declares that 'No law or ordinance shall pass which refers to more than one subject matter.' The obvious purpose of this constitutional provision is to prevent combinations by which different and distinct matters of proposed legislation are presented as one measure, whereby each

of them gains strength and support which it would not have if it were presented solely upon its own merits and voted upon separately. While this provision of the Constitution is not violated when several distinct and independent propositions are combined and presented as one question to be decided by the qualified voters of a municipality or county, yet such a submission to the voters of separate and distinct propositions is clearly contrary to its spirit and violative of the principle which it contains. Why should it be lawful to combine different and independent measures, the adoption of which is dependent upon the votes of the qualified electors, and submit them to the voters, for their adoption or rejection, as a single question, when the people have declared in their Constitution that such a course shall not be pursued in the legislature when laws are to be enacted? The evils to be prevented by prohibiting such a practice are as apparent in the one case as in the other."

The submission to the voters in this case under Senate Resolution 313 was as to the question of whether the Constitution should be amended so as to delete the name and office of State Treasurer therefrom. The various amendments to the Constitution submitted pursuant to that resolution, though dealing with four separate and unrelated constitutional provisions, related to and were germane to that end and nothing more. Senate Resolution 313 was not subject to the criticisms leveled against it in the first court of the complaint.

■ The rationale set forth in the foregoing division aptly applies to Burson's attack on the Executive Reorganization Act of 1972. While the scope and sweep of that Act are broad, it is difficult to see how the manifest purpose thereof as set forth in Section I B of the Act could be effectively accomplished except in one enactment. Among the stated purposes of the Act are that "the agencies which comprise the executive branch should be consolidated into a reasonable number of departments

consistent with executive capacity to administer effectively at all levels. The agencies in the executive branch should be merged into one of the departments of the executive branch established or continued under this Act to achieve maximum efficiency and effectiveness." Ga. L. 1972, p. 1017. And, "It is the intent of this reorganization Act to simplify the operation of the executive branch of the state government and provide for the orderly transfer of functions of existing agencies to departments provided by this Act, with the least disruption of the delivery of governmental services." Ga. L. 1972, p. 1018. All of the parts of the Act appear to be designed to accomplish these purposes. To require that the various changes in State governmental organization sought to be accomplished by this Act be broken down into separate components and enacted as separate Acts in a piece-meal fashion would risk disruption and frustration of the purposes of the Act and perhaps the creation of one or more hiatuses in the governmental structure of the State should one or more of the separate Acts fail to pass. This result would not be salutary. Under the circumstances, we think it is apparent that the Act had but a single subject matter, that is, governmental reorganization, and under the rules of law set forth in the foregoing division of this opinion, it was not subject to the constitutional attack leveled by the plaintiff. All of its parts were germane to a single purpose. See *Crews v. Cook,* 220 Ga. 479, 481 (139 SE2d 490) and *Undercofler v. Hospital Authority of Forsyth County,* 221 Ga. 501, 505 (145 SE2d 487).

■ Finally, we deal with Burson's contention that the language of submission of the constitutional amendment proposed by Senate Resolution 313 was insufficient to inform the voters of the issue on which they were to vote and that this invalidated the ratification of the constitutional amendment. There is no merit in this contention. In *McLennan v. Aldredge,* 223 Ga. 879, 882

(159 SE2d 682), in quoting from the earlier case of *Cooney v. Foote,* 142 Ga. 647, 654 (83 SE 537, AC 1916B 1001), this court said (paraphrased): The publication of the proposed amendment in newspapers of general circulation as provided by the Constitution is the means to be utilized in informing the voters as to the exact nature of the proposed change or addition to the Constitution to be accomplished by the proposed amendment. It was never contemplated that the text of the amendment be printed on the ballot. " 'On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment which had been published in each congressional district. The amendment was submitted to the elector, and the formula prescribed was simply to elicit his expression as to whether or not the proposed amendment should become a part of the organic law. The formula written or printed on his ballot was but the legislative means of obtaining his expression upon the published proposal; and when he adopted the formula he indicated his vote upon the whole amendment which was submitted, and not a mere part.' See also *Townsend v. Smith,* 144 Ga. 792, 796 (87 SE 1039)." The language which was printed on the ballots in this case was clearly sufficient to identify the amendment which the electorate was called upon to ratify or reject. When considered in connection with the advertisement of the text of the amendment, the electorate was sufficiently informed of the content thereof, and it cannot be said that the electorate was in any way misled by the wording printed on the ballots or that the electorate could have been confused as to just exactly what proposed amendment it was voting on.

It follows that none of the grounds of enumerated error in the cross appeal are meritorious.

*Judgment reversed on the main appeal; cross appeal affirmed. All the Justices concur.*