## 34037. WALL et al. v. BOARD OF ELECTIONS OF CHATHAM COUNTY et al.
## 34038. McDOWELL v. BOARD OF ELECTIONS OF CHATHAM COUNTY et al.

MARSHALL, Justice.

The present case presents challenges to the constitutionality of a local annexation statute for the City of Savannah. Ga. L. 1978, p. 3998 (referred to hereinafter as the annexation statute or the Act).

Under Section 1 of the Act, the Board of Aldermen of the City of Savannah is enlarged from six members to eight members. However, the present method for electing the mayor remains unchanged. The six members of the aldermanic board had previously been elected on an at-large basis. Section 1 provides that two of the members of the new eight-member board are to be elected at large; the remaining six members are to be elected from six single-member aldermanic districts, as established in Section 1.

Section 2 of the Act provides that the present city limits of Savannah shall be extended to include certain designated areas. Section 6 of the Act provides that after the Act is approved by the Governor or otherwise becomes law, it shall be the duty of the Board of Elections of Chatham County to issue the call for an election for the purpose of submitting this Act to the voters residing within the present city limits and the area proposed to be annexed. If more than one half of the total number of votes cast is for approval of the Act, it shall become of full force and effect at the times specified by Section 8 of the Act; otherwise, it shall be void.

The Act was approved by the Governor on March 17, 1978. The Board of Elections of Chatham County scheduled the annexation referendum to be held on April 19, 1978. Ben and Alice Wall, who are residents, taxpayers, and electors within the original city limits of Savannah, brought suit in Chatham Superior Court on April 10, 1978, arguing that the Act is unconstitutional and requesting that the referendum be enjoined. On April 14, 1978, Henry W. McDowell, a resident of the area proposed to be annexed, sought to intervene. McDowell's

primary argument was that the proposed annexation would result in changes in the municipal electoral process that would substantially dilute the voting strength of black voters within the presently incorporated area of Savannah. McDowell requested that the referendum be enjoined because, among other reasons, the implementation of the Act had not been submitted for approval to the Attorney General of the United States or a three-judge United States District Court for the District of Columbia, as required by Section 5 of the Voting Rights Act of 1965 (42 USCA, Section 1973c, as amended).

On April 17, 1978, the Chatham Superior Court denied the parties' requests for a temporary restraining order to restrain the holding of the referendum. The referendum was held as scheduled on April 19, 1978, and a majority of those voting voted to approve the Act. The superior court entered an order on June 8, 1978, upholding the constitutionality of the Act. However, the superior court did grant a supersedeas pending this appeal enjoining the Board of Elections of Chatham County from certifying as elected the candidates in connection with the Savannah city election scheduled for July 11, 1978.

In Case No. 34037, Ben and Alice Wall appeal. In Case No. 34038, Henry W. McDowell appeals. The questions raised in each appeal are identical, and, therefore, the appeals have been consolidated for decision.

1. Section 5 of the Voting Rights Act of 1965 prohibits the implementation of any change in a voting standard, practice or procedure in states or political subdivisions thereof which are within the coverage of the Act, unless the change has been submitted to either the Attorney General of the United States or to a three-judge District Court for the District of Columbia for prior approval. The constitutionality of this far-reaching law was sustained in South Carolina v. Katzenbach, 383 U. S. 301 (86 SC 803, 15 LE2d 769) (1966).

Section 5 requires the federal authorities to examine submitted changes in voting practices to determine whether they have the purpose or will have the effect of denying or abridging the right to vote on account of

race, color, or membership in a minority group. It is significant to note that the concern of Section 5 in a case such as the present one is with the changes in voting which proceed from the annexation, and not with the validity of the annexation itself.

However, changing boundary lines by annexations which enlarge the city's number of eligible voters constitutes the change in a standard, practice or procedure with respect to voting. Perkins v. Matthews, 400 U. S. 379 (91 SC 431, 27 LE2d 476) (1971). Where the proportion of blacks in the annexed area is appreciably less than the proportion of blacks living within the city's old boundaries, a change from an at-large to a single-district electoral system has been found necessary so that the post-annexation electoral system would fairly recognize the minority's political strength. See City of Petersburg v. United States, 354 FSupp. 1021 (1972), affd. 410 U. S. 962 (93 SC 1441, 35 LE2d 698) (1973); City of Richmond v. United States, 422 U. S. 358 (95 SC 2296, 45 LE2d 245) (1975).

Following the annexation of unincorporated areas of Chatham County into the City of Savannah, blacks will constitute a lesser percentage of the population of the city than before annexation. It can thus be seen that the purpose of changing the method for electing the aldermanic board was so that the political strength of black voters would not be unnecessarily diluted in violation of federal law.

The Attorney General initially interposed an objection to the implementation of this annexation because of the at-large feature of the new plan for electing members of the aldermanic board by district. However, based on newly acquired information showing that blacks would constitute a voter majority in three rather than two of the newly created aldermanic districts, the Attorney General withdrew the objection.

Accordingly, the appellants' argument that the annexation referendum should not have been held since federal approval had not been obtained is now moot.

2. Whether or not the trial court erred in refusing to enjoin the annexation referendum is also a moot question, since the referendum itself has already been held. *Bruck*

*v. City of Temple,* 240 Ga. 411 (2) (240 SE2d 876) (1977);. *Richmond County Business Assn. v. Richmond County,* 222 Ga. 772 (152 SE2d 738) (1966).

3. The appellants argue that the inclusion into one law of the provision for annexation and the provision for changing the aldermanic electoral system violated the section of the State Constitution prohibiting the passage of a law which refers to more than one subject matter. Art. III, Sec. VII, Par. IV of the Georgia Constitution of 1976 (Code Ann. § 2-1304).[1]

The laudable purpose behind this constitutional requirement was well stated in *Rea v. City of LaFayette,* 130 Ga. 771, 772 (61 SE 707) (1908): "Each proposition submitted to the voters should stand or fall upon its own merits, without, on the one hand, receiving any adventitious aid from another and perhaps more popular one, or, on the other hand, having to carry the burden of supporting a less meritorious and popular measure. No voter should be compelled, in order to support a measure which he favors, to vote also for a wholly different one which his judgment disapproves, or, in order to vote against the proposition which he desires to defeat, to vote against the one which commends itself to the approval of his judgment." In *Rea v. City of LaFayette,* supra, several different, unrelated bond issues were submitted to the voters in one referendum. The court labeled this as "something closely akin to coercion" and as "not at all conducive to a free and untrammelled expression of public sentiment as to the merits of either." 130 Ga. at 772-773.

However, questions have been found to be properly

_____

[1]The appellants also argue that this feature of the Act violates various other state and federal constitutional provisions embodying the principle that separate and distinct propositions be submitted separately to the electorate. The validity of including these two measures into one law is governed by the multiple subject-matter rule of the State Constitution, cited above. If this state constitutional requirement has not been violated, it necessarily follows that the other constitutional provisions have not been violated either.

consolidated into one law where the initial question was whether something should be done and the additional questions were merely incidental to the accomplishment of it. See *Carter v. Burson,* 230 Ga. 511 (198 SE2d 151) (1973). See also *Hammond v. Clark,* 136 Ga. 313 (71 SE 479) (1911). As stated in *Carter v. Burson,* supra, 230 Ga. at 519, "The test of whether an Act or a constitutional amendment violates the multiple subject matter rule is whether all of the parts of the Act or of the constitutional amendment are germane to the accomplishment of a single objective."

In *Crews v. Cook,* 220 Ga. 479 (139 SE2d 490) (1964), the question for decision was whether the multiple subject-matter rule permitted the inclusion in one Act of amendments to several Code sections, all of which dealt with and related directly to the subject of wills and estates. The court had no trouble in holding that this was permissible. "[T]he word 'subject matter' as used in the Constitution . . . is to be given a broad and extended meaning so as to allow the legislature authority to include in one Act all matters having a logical or natural connection. To constitute plurality of subject matter, an Act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any logical connection with or relation to each other." 220 Ga. at 481.

The appellants seem to concede that a mere enlargement of the aldermanic board was closely enough related to the annexation that it could be included in the same law. However, the appellants argue that a change in the method for electing aldermen was not closely enough related and should have been submitted to the voters separately.

The effect of the Voting Rights Act of 1965 is to make implementation of this municipal annexation conditional upon a change in the method for electing the governing body of the municipality. In view of this fact, we find that the electoral change is ancillary to and a necessary incident of the annexation and, therefore, was properly included in the same law.

4. The appellants also argue that the Act contains matter different from what is expressed in the title, which

is also prohibited by Art. III, Sec. VII, Par. IV of the State Constitution. This argument is clearly without merit. The title to this Act states the purpose of the Act to be "To amend the several Acts relating to and incorporating the Mayor and Aldermen of the City of Savannah, so as to provide that there shall be eight Aldermen of the City of Savannah; to provide for the election of said Aldermen; to extend the corporate limits of the City of Savannah; to provide for other matters relative to the foregoing; to provide for a referendum; to provide for severability; to provide for effective dates; to repeal conflicting laws; and for other purposes."

5. Our ruling in Division 3, supra, controls the appellants' argument that the submission of the annexation statute to the voters in the form of the language used on the ballot was in violation of Section 34A-1004(d) of the Georgia Municipal Election Code (Code Ann. § 34A-1004(d) (Ga. L. 1968, pp. 885, 921; 1969, pp. 282, 284; 1974, pp. 82, 85; 1978, p. 1024)).

6. The appellants argue that Section 6 of the Act is invalid in that it allows a majority of voters in both the annexing city and the annexed territories to determine whether to pass the annexation statute. They argue that this method of submitting the Act for local voter approval is invalid because it improperly treats the annexing city and annexed territories as one electoral unit. The appellants contend that since the constituencies in these areas have antagonistic interests in the annexation, and since the population in the annexing city far outnumbers the population in the area to be annexed, the single-majority referendum "obscured the will of the electors" in the annexed area and defeated the purpose of "free exercise of the elective franchise."[2]

The appellants concede that under decisions of this court, the General Assembly may enact local legislation annexing territory to a municipality without even

---

[2]In the annexed area, 5,037 voters voted against annexation and 1,346 voters voted in favor of annexation. In the original city limits, 12,800 voters voted in favor of annexation and 2,857 voters voted against annexation.

conditioning the annexation measure on local voter approval. *Bruck v. City of Temple,* 240 Ga. 411, supra; *Holloway v. Mayor &c. of Whitesburg,* 225 Ga. 152 (166 SE2d 576) (1969); *Lee v. City of Jesup,* 222 Ga. 530 (150 SE2d 836) (1966), cert. den. 386 U. S. 993; *Toney v. Mayor &c. of Macon,* 119 Ga. 83 (46 SE 80) (1903). However, the appellants argue that once the General Assembly made the decision to submit the question of annexation to the local electorate, it could not do it in the manner attempted here. As authority for this argument, the appellants cite the decision of the Supreme Court of the United States in Town of Lockport v. Citizens for Community Action, 430 U. S. 259 (97 SC 1047, 51 LE2d 313) (1977), as well as the decision of this court in *Thompson v. Willson,* 223 Ga. 370 (155 SE2d 401) (1967).

There is language in Town of Lockport v. Citizens for Community Action, supra, indicating that since the residents of the annexing city and the area to be annexed form sufficiently different constituencies with sufficiently divergent interests, the state could constitutionally require a majority vote in both areas in a local referendum to approve annexation. However, under Hunter v. City of Pittsburgh, 207 U. S. 161 (28 SC 40, 52 LE 151) (1907), cited in the Lockport decision without disapproval, the state may group into one electoral unit the annexing area and the area to be annexed and condition passage of the annexation measure upon a majority of the total vote. This is precisely what was done in Hunter v. City of Pittsburgh, supra, as well as in *Lee v. City of Jesup,* supra, and *Bruck v. City of Temple,* supra.

*Thompson v. Willson,* supra, also cited by the appellants, is inapposite. That case involves the right to vote in a municipal election for the candidate of one's choice.

7. The appellants contend that inclusion in the Act of the provisions for increasing the size of the aldermanic board and creating aldermanic districts offends Art. III, Sec. VII, Par. IV of the Georgia Constitution of 1976 (Code Ann. § 2-1309) in that there was no mention of this in the notice of intention to introduce local legislation.

The notice of intention to introduce local legislation provided that, "Notice is hereby given of intention to

apply for local legislation in the 1977 Session of the General Assembly of Georgia to amend the Charter of the Mayor and Aldermen of the City of Savannah to extend and change the corporate limits and for other purposes."

This general notice under attack was sufficient to put the citizens of Chatham County on notice as to the subject matter of the proposed legislation. "This court, construing this constitutional provision in *Walker Electrical Co. v. Walton,* 203 Ga. 246, 252 (46 SE2d 184), held: 'Under reasonable rules of construction, the Constitution of 1945 (art. 3, sec. 7, par. 15), requiring the publication of notice, does not require more information as to the law to be enacted than would be required in the caption of the bill itself.' In *Tison v. City of Doerun,* 155 Ga. 367, 372 (116 SE 615), it is said: 'The title of this act expressly declares that its purpose is to amend the charter of the City of Doerun. This is clearly broad enough to refer to any change made in this charter in the body of the act.' See also *Swiney v. City of Forest Park,* 211 Ga. 154, 155 (1) (84 SE2d 573), and *Panlos v. Stephenson,* 213 Ga. 816 (1) (102 SE2d 165)." *Parker v. Mayor &c. of Savannah,* 216 Ga. 210, 213 (115 SE2d 555) (1960). Under principles laid down in *Smith v. Abercrombie,* 235 Ga. 741 (221 SE2d 802) (1975) and cits., this notice of intention was sufficient to satisfy the constitutional requirement of Code Ann. § 2-1309.

8. The appellants argue that the annexation statute is invalid because of an inconsistency between Section 1 (which describes the aldermanic districts by means of census tract maps) and Section 2 (which contains the description of the areas proposed to be annexed). Section 2 excludes certain areas or "islands" from the area to be annexed. These "islands" contain several hundred acres of improved manufacturing and industrial property and 23 registered voters and citizens who lived therein. However, these "islands" are not excluded from the description of the aldermanic districts in Section 1.

"It is, of course, fundamental that 'the cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose.' *Ford Motor Co. v. Abercrombie,* 207 Ga. 464, 467 (62 SE2d 209). As was well

said in *Erwin v. Moore,* 15 Ga. 361, 364, 'the intention of the legislature is the cardinal guide to construction. "The real intention, when collected with certainty, will always, in statutes, prevail over the literal sense of terms." . . . "In construing a statute, wherever the intention of the legislature can be discovered, it should be followed with reason and discretion, though such construction should seem contrary to the letter of the statute." ' " *City of Jesup v. Bennett,* 226 Ga. 606, 608 (176 SE2d 81) (1970).

In the present case, it seems apparent to us that the intent of the legislature was to annex into the city the areas described in Section 2 of the Act. Section 2 excludes from annexation certain small pockets of land within the annexed territory. However, as described in Section 1 of the Act, these pockets of land are not excluded from the newly created aldermanic districts. The question thus presented is whether this inconsistency between the different sections of the Act can be corrected by judicial construction, or whether this variance is fatal to the validity of the entire Act. We think that since the legislative intent to annex the areas described in Section 2 can be discerned, it is not an unwarranted exercise of judicial authority to resolve the slight variance between the property descriptions in Sections 1 and 2 by holding that the description in Section 2 controls.

In the judgment appealed from, the trial court ruled that although there were errors in the property descriptions in the Act, the areas annexed and the aldermanic districts can be ascertained. We agree with this, but we do not agree that these pockets of land not excluded from Section 1 can remain within the aldermanic districts even though they have been excluded in Section 2 from the annexed territory. Since it is unclear whether the effect of the trial court's judgment is to permit these pockets of land to remain in the aldermanic districts, on remand the trial court is ordered to clarify its judgment so as to order these pockets of land removed from the aldermanic districts.

9. Finally, the appellants argue that the scheduling of the referendum election on April 19, 1978, resulted in a violation of Section 34A-602 of the Georgia Municipal Election Code (Code Ann. § 34A-602; Ga. L. 1968, pp. 885,

907). Code Ann. § 34A-602 provides, "Subject to the provisions of section 34A-601, the governing authority of the municipality in which the same are located may divide or redivide any election district into two or more election districts of compact and contiguous territory, or alter the bounds of any election district, or form an election district out of two or more adjoining districts or parts of districts, or consolidate adjoining election districts, so as to suit the convenience of the electors and to promote the public interests. The bounds of an election district shall not be altered on a day in which a primary or election is held, or during the period of 60 days prior to any general primary or election, or during the period of 30 days prior to any special primary or election. The governing authority shall promptly notify the board of registrars of any change in the bounds of election districts."

The appellants argue that under the city charter, as amended in 1974, the next general election for mayor and aldermen was set for July 11, 1978. Under Code Ann. § 34A-701 (Ga. L. 1968, pp. 885, 909), the municipal primary election to nominate candidates for mayor and aldermen must be at least four weeks prior to the general election. Thus, the appellants argue that this leaves only 55 days between the date set for the referendum election, April 19, 1978, and the latest date for holding the primary election, June 13, 1978.

Since the annexation statute also made provision for a change in the aldermanic electoral system from an at-large to a district basis, this would of necessity require an alteration in the bounds of the municipal election districts. However, this alteration in the bounds of the municipal election districts was brought about by the local annexation statute and not the action of the municipal governing authority. As we read Code Ann. § 34A-602, it is only where the governing authority of the municipality seeks to alter the bounds of municipal election districts that the 30-day and 60-day time limit provisions are triggered.

Since we do not find meritorious any of the grounds on which it is alleged that the annexation statute is unconstitutional or otherwise invalid, the judgment of the

trial court sustaining the constitutionality and validity of the statute is affirmed.

The judgment is affirmed with the directions set out in Division 8.

*Judgment affirmed with direction. All the Justices concur.*

ARGUED SEPTEMBER 19, 1978 — DECIDED OCTOBER 30, 1978 — REHEARING DENIED NOVEMBER 21, 1978 IN CASE NO. 34037.

*Killorin & Schroder, Edward W. Killorin, Eugene McCracken,* for appellants (Case No. 34037).

*James B. Blackburn, Anton Solms, Gordon B. Smith, Stanley M. Karsman,* for appellees (Case No. 34037).

*Stanley M. Karsman,* for appellant (Case No. 34038).

*James B. Blackburn, Anton Solms, Gordon B. Smith, Eugene McCracken,* for appellees (Case No. 34038).