NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 28, 2025

S24A1273. WHITE et al. v. CITY OF MABLETON.

MCMILLIAN, Justice.

In 2022, the Georgia General Assembly enacted House Bill 839 (2022) ("HB 839"), which provides a charter for and incorporates the City of Mableton within unincorporated Cobb County. Deidre White, Ronnie Blue, Judy King, Tanya Leake, and Robert Swarthout are citizens of Cobb County who reside within the limits of Mableton (the "Appellants"). They contend that HB 839 is unconstitutional in violation of the "Single Subject Rule" of the Georgia Constitution and this Court's precedent under *Rea v. City of LaFayette*, 130 Ga. 771 (61 SE 707) (1908), because HB 839 creates "more than one unit of government," i.e., Mableton and one or more community improvement districts ("CIDs") within Mableton. We conclude that HB 839 does not violate the Single Subject Rule or run afoul of *Rea*

and therefore affirm the trial court's dismissal of the Appellants' complaint.

On May 9, 2022, Governor Brian Kemp signed HB 839 into law after its passage in the General Assembly. HB 839 expressly provides for the creation of Mableton, with the duties and powers typically associated with a city, and creates one or more CIDs within Mableton.[1] The title of HB 839 identifies the following purpose:

> To incorporate the City of Mableton; to provide a charter for the City of Mableton; to provide for incorporation, boundaries, and powers of the city; to provide for a governing authority of such city and the powers, duties, authority, election, terms, method of filling vacancies, compensation, qualifications, prohibitions, and removal from office relative to members of such governing authority; to provide for inquiries and investigations; to provide for organization and procedures; to provide for ordinances and codes; to provide for the offices of mayor and city manager and certain duties and powers relative to those offices; to provide for administrative responsibilities; to provide for boards, commissions, and

---

[1] Specifically, HB 839 provides, in relevant part: "Pursuant to Article IX, Section VII of the Constitution of the State of Georgia, there is created one or more community improvement districts to be located in the City of Mableton, Georgia, wholly within the incorporated area thereof, which shall be activated upon compliance with the conditions set forth in this section." Article IX, Section VII of the Georgia Constitution permits the General Assembly to create CIDs for any county or municipality or to provide for the creation of such CIDs by any county or municipality, describes the purposes of CIDs, and governs their administration.

authorities; to provide for a city attorney and a city clerk; to provide for rules and regulations; to provide for a municipal court and the judge or judges thereof; to provide for practices and procedures; to provide for taxation and fees; to provide for franchises, service charges, and assessments; to provide for bonded and other indebtedness; to provide for accounting and budgeting; to provide for purchases; to provide for the sale of property; to provide for bonds for officials; to provide for definitions and construction; to provide for other matters relative to the foregoing; to provide for a referendum; to provide effective dates; to provide for transition of powers and duties; to provide for community improvement districts; to provide for directory nature of dates; to provide for related matters; to repeal conflicting laws; and for other purposes.

Because HB 839 was required to be approved by ballot referendum, HB 839 was put on the November 8, 2022 ballot with the following question: "Shall the Act incorporating the City of Mableton in Cobb County, imposing term limits, prohibiting conflicts of interest, and creating community improvement districts be approved?" After voters approved HB 839, Mableton became fully operational on HB 839's effective date, January 1, 2023.

In May 2023, Appellants filed their complaint seeking declaratory relief against Mableton, claiming that HB 839 and the

3

ensuing ballot referendum question refer to more than one subject matter and are therefore unconstitutional under the Single Subject Rule and in contravention of this Court's holding in *Rea.* Following a hearing, the trial court granted Mableton's motion to dismiss for failure to state a claim upon which relief could be granted pursuant to OCGA § 9-11-12 (b) (6). This appeal followed.[2]

1. In their first enumeration of error, Appellants assert that the trial court erred in dismissing their complaint[3] because HB 839

---

[2] This Court properly has jurisdiction of this appeal because it presents a question about the constitutionality of a statute. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1).

[3] A motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) should be granted only where

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Northway v. Allen*, 291 Ga. 227, 229 (728 SE2d 624) (2012) (citation omitted). We review de novo a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted. See id. Here, even construing the allegations of Appellants' complaint in their favor as the nonmovants, see *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020), the issue presented is purely a legal question. See *Raffensperger v. Jackson*, 316 Ga. 383, 387 (2) (888 SE2d 483) (2023) ("We review de novo the trial court's

4

violates Georgia's Single Subject Rule, which provides: "No bill shall pass which refers to more than one subject matter or contains matter different from what is expressed in the title thereof." Ga. Const. of 1983, Art. III, Sec. V, Par. III.

We have previously described the origins of this rule, which made its first appearance in Georgia's Constitution of 1798 in the aftermath of the Yazoo Land Fraud.[4] See *Fulton County v. City of Atlanta*, 305 Ga. 342, 345-46 (2) (825 SE2d 142) (2019). The purpose of the Single Subject Rule is to prohibit legislation with "provisions concerning 'incongruous' or 'unrelated' subject matters in a single legislative act." Id. at 346 (2) (citation and punctuation omitted). We have recognized this standard since at least 1902 and concluded that

conclusion regarding the constitutionality of a statute." (citation and punctuation omitted)).

[4] The "Yazoo Land Fraud" refers to a notorious event in Georgia history in which "an obscure legislative provision not indicated in the title of its statute authorized the sale of over 35,000,000 acres of land which now comprise the states of Alabama and Mississippi to certain land speculation companies for a mere $500,000 dollars, or less than two cents per acre. By an act of February 13, 1796, the Georgia Legislature tried to declare this egregious fraud null and void," but the United States Supreme Court struck down this subsequent legislation. *Lutz v. Foran*, 262 Ga. 819, 825 n.7 (427 SE2d 248) (1993) (Sears-Collins, J., dissenting).

5

it requires courts to determine whether all the parts of the legislation are "germane to the accomplishment of a single objective." Id. (citation and punctuation omitted). In applying this standard, we have explained that "it is permissible for the objective . . . to be broad" and that "the General Assembly may include in a single act . . . all matters having a logical or natural connection." Id. (citation and punctuation omitted). See also *Wall v. Bd. of Elections of Chatham County*, 242 Ga. 566, 570 (3) (250 SE2d 408) (1978) ("The word 'subject matter' as used in the Constitution is to be given a broad and extended meaning so as to allow the legislature authority to include in one act all matters having a logical or natural connection."). To constitute distinct subject matters that would violate the Single Subject Rule, a piece of legislation "must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any logical connection with or relation to each other." Id. at 570 (3) (cleaned up) (quoting *Crews v. Cook*, 220 Ga. 479, 481 (139 SE2d 490) (1964)).

Thus, the relevant question here is whether HB 839's CID

6

provision is a "subject matter" that is germane to HB 839's overall objective of incorporating Mableton or whether it is so "dissimilar and discordant" that the creation of CIDs has no "logical connection with or relation to" the incorporation of Mableton. *Wall*, 242 Ga. at 570 (3). The subject matter of HB 839, as summarized in its title, is to define the powers and responsibilities that are necessary and appropriate for the newly created Mableton. And to accomplish its stated goal, the body of HB 839 includes what one would expect in such a charter: Article I (Incorporation and Powers); Article II (Government Structure); Article III (Administrative Affairs); Article IV (Judicial Branch); Article V (Elections and Removal); Article VI (Finance); and Article VII (General Provisions).

Article VIII (Community Improvement Districts), the only part of HB 839 that Appellants challenge, provides: "The purpose of this article shall be to provide *enabling legislation* for the creation of one or more community improvement districts *within the City of Mableton,* and such district or districts *may be created* for the provision of some or all of the following governmental services and

7

facilities as provided and authorized by Article IX, Section VII of the Constitution of the State of Georgia . . . ." (emphasis supplied). Section 8.12 then provides that "[p]ursuant to Article IX, Section VII of the Constitution of the State of Georgia, there is created one or more community improvement districts to be located *in the City of Mableton, Georgia,* wholly within the incorporated area thereof, which shall be activated upon compliance with the conditions set forth in this section." (emphasis supplied).[5] The remainder of the article provides for the appointment of board members for the CID, sets out the powers of the board, provides that the CID may incur debt, and outlines conditions under which the CID may be dissolved.

The General Assembly is undoubtedly authorized to "provide by law for the self-government of municipalities and to that end is expressly given the authority to delegate its power . . . ." Ga. Const. of 1983, Art. IX, Sec. II, Par. II. And the General Assembly "may by

---

[5] These conditions include adoption of a resolution by the governing authority for Mableton and written consent by the majority of owners of real property within the district which will be subject to taxes, fees, and assessments levied by the board of the CID. Section 8.15 provides that the boundaries of the CID or CIDs are to be set forth in this resolution.

local law create one or more community improvement districts for any county or municipality *or provide for the creation of one or more community improvement districts by any county or municipality.*" Id. at Art. IX, Sec. VII, Par. I (emphasis supplied). Therefore, the only question is whether the General Assembly can exercise these powers at the same time in the same legislation for one municipality. To answer this question, it is helpful to understand the nature of a CID.

We have explained that "a CID allows the local government to place on private businesses, subject to certain consent requirements, the costs of financing infrastructure improvements necessitated by commercial or industrial development, in a manner advantageous to both the governing authority and the businesses within the CID." *Mcleod v. Columbia County*, 278 Ga. 242, 243 (1) (599 SE2d 152) (2004). See also James P. Monacell, "Community Improvement Districts as a Tool for Infrastructure Financing," 27 Ga. St. B. J. 203 (1991). Under our Constitution, CIDs have the authority to provide a variety of services, including:

    (1)  Street and road construction and maintenance,

including curbs, sidewalks, street lights, and devices to control the flow of traffic on streets and roads.
(2) Parks and recreational areas and facilities.
(3) Storm water and sewage collection and disposal systems.
(4) Development, storage, treatment, purification, and distribution of water.
(5) Public transportation.
(6) Terminal and dock facilities and parking facilities.
(7) Such other services and facilities as may be provided for by general law.

Ga. Const. of 1983, Art. IX, Sec. VII, Par. II.[6]

Notably, every purpose for which a CID can be constitutionally created is also covered under a municipality's supplementary powers, meaning the General Assembly is delegating similar, if not identical powers to both CIDs and municipalities by enacting HB 839. Compare Ga. Const. of 1983, Art. IX, Sec. VII, Par. II (setting

---

[6] Our Constitution further provides:

The administrative body of a community improvement district may incur debt, as authorized by law, without regard to the requirements of Section V of this Article, which debt shall be backed by the full faith, credit, and taxing power of the community improvement district but shall not be an obligation of the State of Georgia or any other unit of government of the State of Georgia other than the community improvement district.

Ga. Const. of 1983, Art. IX, Sec. VII, Par. IV.

10

forth the purposes of CIDs) with id. at Art. IX, Sec. II, Par. III (4)-(7), (9), (11) (setting forth supplementary powers that municipalities may exercise that are also listed as purposes of CIDs).

Not only is the legislature exercising similar powers in chartering a city and creating CIDs, but in this case, the legislature is exercising its powers in connection with the creation of a single municipality. HB 839 only authorizes Mableton to create CIDs within its city limits, and the purpose of those CIDs is to allow Mableton to finance certain infrastructure and improvements in the same way that the charter provides for Mableton to exercise other powers to finance its operations. Thus, there is "a logical or natural connection" to providing for the creation of a CID within Mableton at the same time as establishing Mableton. *Fulton County*, 305 Ga. at 346 (2).

Nonetheless, Appellants argue that, because a CID is a separate unit of government with its own board and power to incur debt, HB 839 violates the Single Subject Rule. Although Appellants point to some cases in which this Court concluded that a piece of

11

legislation violated the Single Subject Rule, none of those cases concerned the creation of a CID and are not controlling here. And many are distinguishable.[7] See, e.g., *Ex Parte Conner*, 51 Ga. 571, 573 (1874) (considering creation of three separate volunteer corps of infantry in two separate cities that would also give the volunteers jury duty exemptions and concluding "[t]his bill is, too, one for private benefit, and makes just the case provided for. If such a bill as this is not obnoxious to the [single subject] rule, it will be difficult to find one."); *King v. Banks*, 61 Ga. 20 (1878) (statute purported to incorporate two municipalities more than 70 miles apart); *Christie v. Miller*, 128 Ga. 412 (57 SE 697) (1907) (act improperly sought to establish a rate of fees for magistrates and constables in the city of Savannah while also providing for the payment of costs by the

---

[7] And at least one case, *Bd. of Public Education v. Barlow*, 49 Ga. 232 (1873) (addressing legislation to give the mayor and council the power to tax and issue city bonds in addition to its stated purpose of creating an independent board of education to supervise the city schools), appears to be restricted to the specific facts of that case and has been the source of much skepticism from this Court since shortly after it was decided. See *Hope v. Mayor of Gainesville*, 72 Ga. 246, 249 (1884) ("[W]e think that [*Barlow*] must be left to stand on its own peculiar merits, and is not to be extended beyond the plain and obvious facts of that case. It is, to say the least of it, of doubtful authority.").

county of Chatham in criminal cases); *Council v. Brown*, 151 Ga. 564 (107 SE 867) (1921) (concluding act that attempted to create two unrelated banks in two separate cities more than 70 miles apart violated Single Subject Rule); *Schneider v. City of Folkston*, 207 Ga. 434 (62 SE2d 177) (1950) (although the act's title only referred to the charter of one municipality, the act's body attempted to amend the charters of two unrelated municipalities and therefore violated the Single Subject Rule); *City of Chamblee v. Village of N. Atlanta*, 217 Ga. 517 (123 SE2d 663) (1962) (violation of Single Subject Rule where act's title referred to amending the charter of the City of Folkston but the act's body sought to remove portions of the Town of Homeland). These cases hinge not on the inclusion of more than one unit of government within a single piece of legislation, but rather on the legislation's inclusion of matters unrelated to a single objective. Put another way, these cases apply the well-established germaneness rule and do not, as Appellants suggest, create a separate "more-than-a-single-unit-of-government" rule.

Nor are we persuaded by the Appellants' argument that,

13

because the creation of cities and CIDs are set forth in separate provisions of the Constitution, they necessarily must be created in separate pieces of legislation. We have previously explained that, in defining the word "subject matter" as used in the Constitution, "[i]t is not synonymous with the word 'provision.' As used in the Constitution, it is to be given a broad and extended meaning so as to allow the legislature authority to include in one Act all matters having a logical or natural connection." *Crews*, 220 Ga. at 481. See also *Carter v. Burson*, 230 Ga. 511, 520-21 (4) (198 SE2d 151) (1973) (although the various legislation dealt with four separate and unrelated constitutional provisions, they were related to and were germane to their single purpose of removing the name and office of state treasurer). We conclude that the Single Subject Rule is focused on the substantive subject matter involved, rather than on the number or even types of governmental units involved or which provisions of the Constitution are invoked. Because the subject matter of HB 839 is the chartering and creation of Mableton, and creating CIDs within Mableton has a logical or natural connection

14

to that subject matter, this enumeration of error fails. See *Wall*, 242 Ga. at 570 (3).

2. Appellants also assert that HB 839's ballot question contravenes our holding in *Rea*. In that case, this Court first extended the principle of the Single Subject Rule to ballot measures. See *Rea*, 130 Ga. at 772 ("[T]wo or more separate and distinct propositions cannot be combined into one and submitted to the voters of a county or a municipality as a single question, so as to have one expression of the voter answer all of them."). For the reasons discussed in Division 1, this enumeration of error also fails.

*Judgment affirmed. All the Justices concur, except Boggs, C.J., not participating.*