305 Ga. 342
FINAL COPY

S18A1156. FULTON COUNTY v. CITY OF ATLANTA et al.

BLACKWELL, Justice.

In December 2017, the City of Atlanta enacted an ordinance to annex certain property that lies within the Fulton County Industrial District. Fulton County filed a lawsuit for declaratory and injunctive relief against the City and several of its officers, asserting that the annexation of property within the District was prohibited by a local constitutional amendment ratified in 1979. In response, the City argued that the 1979 amendment was never constitutionally adopted, that it was repealed in any event by the adoption of the Constitution of 1983, and that local laws purporting to continue the amendment are themselves unconstitutional. The trial court agreed, and it held, among other things, that the 1979 amendment was enacted in violation of the

constitutional "single subject" rule. See Ga. Const. of 1976, Art. XII, Sec. I, Par. I.[1] The County appeals,[2] and we affirm.[3]

1. The origins of the 1979 amendment go back at least as far as 1937, when another local amendment was adopted to authorize the County to levy a tax "for educational purposes" on property located within the City. See Ga. L. 1937, p. 18. See also McLennan v. Aldredge, 223 Ga. 879, 881 (1) (159 SE2d

---

[1] There is no dispute that the 1979 amendment is no longer in force today. In 2018, the General Assembly approved legislation (HB 869) that called for a referendum to allow Fulton County voters to decide whether to repeal the 1979 amendment, and Governor Deal signed that legislation in May 2018. See Ga. L. 2018, pp. 4236-4238. The referendum was approved by a majority of the voters in November 2018, and to the extent that the 1979 amendment was operative at that time, it was repealed as of January 1, 2019. That does not, however, resolve this case. The question presented here is whether the 1979 amendment was in force in December 2017, when the City adopted the annexation ordinance at issue.

[2] This dispute between the City and the County previously came before the Court in Fulton County v. City of Atlanta, 299 Ga. 676 (791 SE2d 821) (2016). In that case, we held that the dispute was not justiciable because the City had not yet enacted an annexation ordinance. Following our decision, the City enacted the ordinance at issue here, and the dispute is now ripe for resolution.

[3] In addition to their dispute about the merits, the City and the County disagree about the extent to which this lawsuit is barred by the doctrine of sovereign immunity. Whether a claim is barred by sovereign immunity is a jurisdictional question, see Lathrop v. Deal, 301 Ga. 408, 432 (III) (B) (801 SE2d 867) (2017), and jurisdictional questions generally must be resolved before we can turn to the merits. See McConnell v. Dept. of Labor, 302 Ga. 18, 19 (805 SE2d 79) (2017). But even if sovereign immunity bars some of the County's claims—for declaratory and injunctive relief against the City itself and its officers in their official capacities—it clearly would not bar the claims against city officers in their individual capacities. See Lathrop, 301 Ga. at 443-444 (III) (C). For that reason, we would have to reach the merits of the claims about the constitutionality of the annexation ordinance and the validity of the 1979 amendment in any event. And because we conclude that the trial court correctly decided that the 1979 amendment was never properly enacted, we would affirm the judgment of the trial court, regardless of how we might resolve the question of sovereign immunity. In these unique circumstances, we need not resolve the question of sovereign immunity to decide this appeal. Cf. Kammerer Real Estate Holdings v. Forsyth County Bd. of Commrs., 302 Ga. 284, 285 (1), n.2 (806 SE2d 561) (2017).

682) (1968). Forty years later, the General Assembly enacted legislation to call a referendum on whether the power of the County to levy school taxes within the City ought to be "terminate[d]."[4] See Ga. L. 1977, p. 1569. Around the same time, the General Assembly also enacted legislation to call a separate referendum on whether the creation of an industrial district in the County ought to be authorized. See Ga. L. 1977, p. 1567. Although the General Assembly adopted separate bills to call the two referenda, each bill provided that its remaining provisions would become effective only if *both* referenda were approved. See Ga. L. 1977, pp. 1567, 1572. Voters approved the referendum concerning the creation of an industrial district, but voters rejected the referendum to partially repeal the 1937 school tax amendment. See Ga. L. 1979, pp. 5245, 5263 (reporting results of 1977 referenda). Accordingly, no industrial district was created, and the 1937 school tax amendment continued in force.

---

[4] Both the 1937 school tax amendment and the 1977 school tax legislation concerned the power of counties that contain (wholly or in part) a city of at least 200,000 people to levy a school tax upon property located within any independent school district in the county, but it is undisputed that the only Georgia county with a city of at least 200,000 people (in 1937 and 1977) was Fulton County, and the only independent school district within Fulton County is the Atlanta Independent School System, which operates Atlanta Public Schools.

In 1979, the General Assembly combined the substance of the earlier legislation concerning the creation of an industrial district and the partial repeal of the 1937 school tax amendment into a single, proposed local constitutional amendment. See Ga. L. 1979, p. 1797. Entitled "Fulton County—Taxation for Educational Purposes," most of the provisions of the 1979 amendment relate to the creation of the Fulton County Industrial District and are virtually identical to the provisions of the 1977 industrial district legislation. Like the 1977 legislation, the 1979 amendment purports to establish the District, set out its boundaries, and provide that no property within the District could be "included within the limits of any municipal corporation as now exists or hereafter incorporated except by constitutional amendment." Ga. L. 1979, p. 1799. In addition, the 1979 amendment includes provisions about the taxation of properties within the District and the governance of the District that are identical to the provisions contained in the 1977 industrial district legislation, including a provision that properties within the District "shall be subject to all taxes for school purposes." Id. Finally, unlike the 1977 industrial district legislation (but like the 1977 school tax legislation), the 1979 amendment includes a single paragraph providing that the County "is hereby prohibited

from levying any tax for educational purposes" within the City.[5] Id. at p. 1800.

The 1979 amendment was approved by the voters of the County in November 1979. See Ga. L. 1981, pp. 5395-5396.

The Georgia Constitution of 1976 was repealed in 1983, and for the most part, the Constitution of 1983 did away with local constitutional amendments. See Ga. Const. of 1983, Art. X, Sec. I, Par. I. Significantly, however, the Constitution of 1983 authorized the General Assembly to preserve any preexisting local amendment by legislation, so long as the General Assembly enacted a local law ratifying the amendment to be maintained prior to July 1, 1987. See Ga. Const. of 1983, Art. XI, Sec. I, Par. IV (a). Almost immediately, the General Assembly passed legislation to continue the 1979 amendment. Ga. L. 1983, p. 4078. But the notice of intention to introduce this legislation did not mention the portion of the 1979 amendment dealing with the inability of

---

[5] Like the 1977 school tax legislation, this provision of the 1979 amendment does not refer to the City of Atlanta by name, but it refers instead to "property within Fulton County which is located within the boundaries of an independent school system." The County argues that the provision prohibiting the County from levying school taxes within the City was not a partial revocation of the 1937 local constitutional amendment but rather was a "recitation" of Article VIII, Section VII, Paragraph I of the Constitution of 1976 (which provided that a county "shall annually levy a school tax for the support and maintenance of education . . . upon the assessed value of all taxable property within the county located outside any independent school system"). But the County has offered no compelling argument to explain why the 1979 amendment would need to "recite" a portion of the Constitution of 1976. Nor has it argued that the 1937 local constitutional amendment was not in effect at the time the 1979 amendment was adopted. The 1979 amendment was quite clearly an attempt to partially repeal the 1937 local constitutional amendment.

the County to levy school taxes within the City. In 1986, the General Assembly again purported to continue the 1979 amendment, but this time it erroneously stated that (in addition to creating the District) the 1979 amendment prohibits the County from levying a school tax "within the [D]istrict." And like the 1983 attempt to continue the 1979 amendment, the 1986 legislation did not refer to the levying of school taxes by the County within the City. See Ga. L. 1986, p. 4438.

In this lawsuit, the trial court concluded not only that the 1979 amendment was never properly adopted because its enactment violated the single subject rule, but also that the attempts to continue it in 1983 and 1986 were defective (meaning that it stood repealed in any event by operation of the Constitution of 1983). For the reasons that follow, we agree that the 1979 amendment violated the single subject rule, and we need not, therefore, consider the effect of any defects in the legislation that purported to continue it.

2. The adoption of the 1979 amendment is governed by the Constitution then in force, the Constitution of 1976, which provided in pertinent part:

> When more than one amendment is submitted [to the electorate] at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately. A proposal for one or more

changes within a single Article may be submitted as a single amendment. A proposal for one or more changes within a single Article and a related change or related changes in one or more other Articles may be submitted as a single amendment.

Ga. Const. of 1976, Art. XII, Sec. I, Par. I. The County argues that the 1979 amendment effected changes to only a single article, and for that reason, it was authorized to be presented for ratification as a single amendment by the plain terms of the Constitution of 1976. But in fact, the 1979 amendment worked changes to two articles of the Constitution: Article VIII, Section VII, Paragraph I, which governed local taxation for education, and Article IX, Section IV, Paragraph II, which governed special districts and the powers of local governments. Accordingly, the Constitution of 1976 permitted the amendment to be presented as a single amendment only to the extent that the changes to Article VIII and the changes to Article IX were "related."

The requirement that changes to our Constitution be "related" if they are to be submitted to voters in a single amendment is known as the single subject rule, and it has origins in Georgia that go back over 200 years. See Walter McElreath, A Treatise on the Constitution of Georgia § 75 (1912) (noting that, in the aftermath of the Yazoo Land Fraud, legislators insisted on a provision within the Constitution of 1798 that "[n]o law or ordinance shall pass

containing any matter different from what is expressed in the title thereof");

see also Ga. Const. of 1798, Art. I, Sec. XVII; Lutz v. Foran, 262 Ga. 819, 825,

n.7 (427 SE2d 248) (1993) (Sears-Collins, J., dissenting) (noting that "Georgia

was the first state to adopt a constitutional title and single-subject

requirement," and that the requirement "had its genesis in the notorious Yazoo

Land Fraud"). The single subject rule has long applied to statutes, and

beginning with the Constitution of 1877 (Article XIII, Section I, Paragraph I),

it has been applied to constitutional amendments as well. The rule for

constitutional amendments was carried forward into the Constitution of 1945

(Article XIII, Section I, Paragraph I), the Constitution of 1976 (Article XII,

Section I, Paragraph I), and the Constitution of 1983 (Article X, Section I,

Paragraph II).[6]

Although the single subject rule has been stated in varying terms over

the years, it long has been understood to prohibit the combination of provisions

---

[6] Article X, Section I, Paragraph II of the Georgia Constitution of 1983 provides: "When more than one amendment is submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately, provided that one or more new articles or related changes in one or more articles may be submitted as a single amendment." When this statement of the single subject rule for constitutional amendments was submitted to the committee charged with drafting this part of the Constitution of 1983, the committee was informed that Art. X, Sec. I, Par. II was "essentially an editorial restatement of the present language in the constitution." Select Committee on Constitutional Revisions, Legislative Overview Committee, Transcript of Meeting on August 20, 1981, p. 95.

concerning "incongruous" or "unrelated" subject matters in a single legislative act or constitutional amendment, Whitley v. State, 134 Ga. 758, 776 (68 SE 716) (1910), in order to "inhibit the passage of . . . 'omnibus' or 'log-rolling' bills." Central of Ga. R. Co. v. State of Ga., 104 Ga. 831, 846 (4) (31 SE 531) (1898). Indeed, we have held that the standard set by the rule "has been in use since at least 1902." Perdue v. O'Kelley, 280 Ga. 732, 733, n.4 (632 SE2d 110) (2006) (citing Welborne v. State, 114 Ga. 793 (6) (40 SE 857) (1902)). That standard requires courts to determine "'whether all of the parts . . . of the constitutional amendment are germane to the accomplishment of a single objective.'" Wall v. Bd. of Elections of Chatham County, 242 Ga. 566, 570 (3) (250 SE2d 408) (1978) (applying single subject rule as provided in the Constitution of 1976 and quoting Carter v. Burson, 230 Ga. 511, 519 (3) (198 SE2d 151) (1973)). Certainly, it is permissible for the objective, or subject matter, of an act or constitutional amendment to be broad, and the General Assembly may include in a single act or constitutional amendment "all matters having a logical or natural connection." Perdue, 280 Ga. at 734 (citation omitted). See also Central of Ga. R. Co., 104 Ga. at 846 (4) ("What the constitution looks to is unity of purpose."). Nevertheless, application of this "germaneness test" "requires identification of the subject-matter or objective

of the amendment," regardless of whether that objective be broad or narrow. Perdue, 280 Ga. at 734.

Here, the County identifies the sole objective of the 1979 amendment as the creation of the District, and it claims that the paragraph that purported to partially revoke the 1937 school tax amendment promoted this sole objective by clarifying the tax burden of properties within the District. But we fail to see how a provision that would prohibit the County from levying a school tax anywhere within the City has anything to do with the District, given that the 1979 amendment itself provides that no portion of the District ever could be within the City (or any other municipality). In fact, the second paragraph of the 1979 amendment clearly states that properties within the District are subject to taxes for school purposes. No "clarification" of this provision was provided by the paragraph that purported to terminate the ability of the County to levy school taxes on properties within the City, all of which, by the terms of the 1979 amendment, would necessarily be outside the District. Simply put, because the 1979 amendment provided that there could be no overlap between the District and the City, the taxation of properties in the City did not (and

could not) relate to the creation of the District.[7] This complete absence of relatedness falls far short of the relation required by the single subject rule. As a result, the trial court correctly concluded that the 1979 amendment was never properly adopted because its enactment violated the single subject rule of Article XII, Section I, Paragraph I of the Georgia Constitution of 1976. See Sherman Concrete Pipe Co. v. Chinn, 283 Ga. 468, 470 (660 SE2d 368) (2008); Black v. Jones, 190 Ga. 95, 97 (8 SE2d 385) (1940) ("when the general purpose of an act is the levying of a State tax on rolling-stores, to be collected by State officers, for definite State purposes, and indeed the only specified purpose, how can it be said that a provision purporting to also give county authorities the right to levy an additional tax on them is germane to this general purpose?"). And because the 1979 amendment

---

[7] It seems clear that the paragraph of the 1979 amendment that purported to partially repeal the 1937 school tax amendment was inserted into the legislation creating the District because the General Assembly was aware (based on its experience with the referenda following the 1977 legislation) that the termination of the school tax amendment was unlikely to be supported by the voters on its own. This is precisely the type of scenario that the single subject rule is designed to prevent.

> "Each proposition submitted to the voters should stand or fall upon its own merits, without, on the one hand, receiving any adventitious aid from another and perhaps more popular one, or, on the other hand, having to carry the burden of supporting a less meritorious and popular measure. No voter should be compelled, in order to support a measure which he favors, to vote also for a wholly different one which his judgment disapproves, or, in order to vote against the proposition which he desires to defeat, to vote also against the one which commends itself to the approval of his judgment."

Wall, 242 Ga. at 569 (3) (quoting Rea v. City of LaFayette, 130 Ga. 771, 772 (61 SE 707) (1908)).

was never constitutionally adopted, the annexation ordinance in question is not barred by the 1979 amendment. The trial court properly entered judgment for the City on the merits of this dispute.

*Judgment affirmed. All the Justices concur, except Warren, J., disqualified.*

Decided March 4, 2019.

Constitutional amendment; single subject rule. Fulton Superior Court. Before Judge Tusan.

Kaye W. Burwell, Denval A. Stewart, Patrise M. Perkins-Hooker, Emily C. Hirst, for appellant.

Bondurant, Mixson & Elmore, Emmet J. Bondurant II, David G. H. Brackett, Robert L. Ashe III; Nina Hickson, Jeffrey S. Haymore; Holland & Knight, Robert S. Highsmith, Jr.; Joseph D. Young, for appellees.